GILMORE, Plaintiff, v. AMERICAN GAS MACHINE COMPANY, Defendant.

Common Pleas Court, Franklin County.

No. 181,216.   Decided August 13, 1952.

570

H. C. Allread, Columbus, for plaintiff.
Bricker, Marburger, Evatt and Barton, Columbus, for defendant.

## OPINION

By GESSAMAN, J.

A jury having been waived, this case is submitted to the Court on the pleadings, the evidence and the briefs of counsel.

On August 26, 1941, a written contract was executed by the parties whereby the defendant agreed to manufacture certain oil burners and the plaintiff was to have the exclusive selling rights during the life of the contract which was to terminate on June 20, 1956. The contract was subsequently modified on two occasions but these modifications dealt only with the amounts to be paid to plaintiff for burners sold.

On September 14, 1950, a letter was sent to plaintiff by F. A. Trow, president of the defendant company, the body of which letter reads as follows:

"This is to advise you that we (Queen Stove Works, Inc.) have acquired control of American Gas Machine Company of Albert Lea, Minnesota.

I understand that you have some sort of a working agreement with said company whereby they paid you a certain commission on sales made to outside concerns for burners to be fabricated by them.

This letter is to advise you that we are not interested in continuing this connection with you so you will please consider such an arrangement cancelled as of this date."

Treating this letter as a renunciation of the contract, plaintiff filed his petition herein on October 2, 1950. Plaintiff seeks to recover the profits which he claims he would have made under the contract for the balance of the term.

For its first defense, defendant entered a general denial. For its second defense it alleged that it was willing to abide by the terms of the contract. For his reply, plaintiff, in substance, alleges that defendant did not indicate its willingness to so abide by the terms of the contract until after he had filed suit and had otherwise changed his position.

At the conlusion of the trial, the Court expresssed some doubt as to whether the defendant had unqualifiedly renounced and repudiated the contract. Upon further study the Court is of the opinion that the letter of September 14, 1950, was a renunciation of the contract in question and could be treated by the plaintiff as such and constituting an anticipatory breach thereof. The rule is well stated in **Builders Supply and Fuel Company v. Huntington and Fink Co., 1 Abs 251** at p. 252:

"A renunciation to be treated as a breach by the opposite party must be clear and unequivocal so that the party will be informed that he need not expect anything further upon the contract from the other side.

To make a renunciation as a breach, the other party must treat it as a breach and act upon it."

(Court of Appeals, Cuyahoga County.)

The plaintiff did act upon the renunciation and thereby treated it as a breach. The president of the defendant company evidently realized that the letter of September 14, 1950, could be considered as a renunciation of the contract for on October 27, 1950, on his authorization, defendant's attorneys wrote to plaintiff attempting to rescind and revoke the letter of September 14, 1950, "so that your relationship with American Gas Machine Company and otherwise, may be **restored to the status existing** prior to writing the above letter of September 14, 1950."

One reason for the Court's earlier doubt as to whether the defendant company had, in fact, renounced the contract, was a letter of September 20, 1950 (Pl. Ex. 10, p. 128) from Mr. Burt Knatvold of the defendant company to plaintiff, but there is no evidence that Mr. Knatvold knew about the letter of September 14, 1950, which was written by Mr. Trow, the president. Furthermore, although Mr. Knatvold's letter refers to plaintiff's letter of September 18, 1950, the evidence later disclosed that Mr. Trow's letter of September 14, was not received by plaintiff until after September 19. The Court, therefore. has concluded that the letters dated September 18 and September 20 in no way affect the action taken by the President of the defendant company on September 14, 1950.

It is urged by counsel for defendant that when he wrote the letter of September 14, 1950, Mr. Trow did not know that a written contract existed between plaintiff and defendant. The fact is, however, that Mr. Trow made it clear that "this connection" or this "arrangement" was "cancelled as of this date". There was only one "connection" or "arrangement" that plaintiff had with the defendant and it follows, therefore, that whatever it was Mr. Trow "cancelled" it as of September 14, 1950.

We conclude, therefore, that the action of the defendant was clear and unequivocal, that it was a renunciation of the contract and that it was treated as such and as an anticipatory breach by plaintiff and that he acted thereon by the filing of this suit on October 2, 1950.

Counsel for defendant contend that, if the action of Mr. Trow be considered as a renunciation, it was withdrawn in time.

In finding the answer to this contention we must consider the rights of plaintiff after he received Mr. Trow's letter and on this subject we find an excellent statement in Central Trust Company v. Chicago Auditorium Assn., 240 U. S. 581, at p. 589 of the opinion:

"It is no longer open to question in this Court that, as a rule, where a party bound by an executory contract repudiates his obligations or disables himself from performance of them before the time of performance, the promisee has the option to treat the contract as ended, so far as further performance is concerned, and maintain an action at once for the damages occasioned by the anticipatory breach. * * *

There is no doubt that the same rule must be applied where a similar repudiation or disablement occurs during performance."

As we have already pointed out, plaintiff did act at once—or within a few days—by filing suit and by making certain deals with other companies. Under the rule, now well established, it appears that the filing

of this suit was sufficient to render it impossible for defendant to retract its renunciation.

In 4 Corbin on Contracts, 930, at Sec. 980, we find this rule:

"One who has committed an anticipatory breach by a manifestation of an intention not to perform his contract has power to nullify its effect as a breach by notifying the promisee that he has changed his wrongful intention and will perform the contract. This power of retraction will cease to exist as soon as the promisee has materially changed his position in reliance on the repudiation. The bringing of a suit by the promisee for the anticipatory breach is one sort of reliance making retraction impossible."

Also in 1 Restatement of the Law of Contracts 481 at Sec. 319:

"The effect of repudiation is nullified (a) where statements constituting such repudiation are withdrawn by information to that effect given by the repudiator to the injured party before he has brought an action on the breach or has otheriwse materially changed his position in reliance on them; * * *"

There may be some question as to whether the deals made by the plaintiff after he received Mr. Trow's letter materially changed his position but the fact remains that he did file suit. It follows, therefore, that the attempted retraction after suit was filed was ineffectual. What, then, may plaintiff recover for this breach of contract?

The only evidence presented on the question of damages was that of the plaintiff. He testified that, in his opinion, he could have sold from eight to ten thousand burners per year for the remainder of the life of the contract. This testimony is not born out by other evidence in the case. At pp. 77 and 78 of the record we find that plaintiff's sales in previous years were as follows:

| 1947 - | 15,487 burners |
|---|---|
| 1948 - | 7,265 burners |
| 1949 - | 6,802 burners |
| 1950 (to Sept. 14) | 5882 burners. |

These figures show a gradual decline in annual sales to a point well below the 9000 (average) estimate of plaintiff. Furthermore, plaintiff testified (p. 80) that The Lennox Furnace Company was "purchasing the largest number of these burners" and the record further discloses at pp. 120 and 125 that late in 1950 Lennox discontinued the use of the burners in question due to a change in the oil that had to be used in them or that was available for use in them. It is true that plaintiff testified (p. 96) that he "probably would have saved the Lennox account" That, of course, is speculative. The result is that the plaintiff's testimony as to the number of burners he could have sold during the remainder of the term of the contract is a pure conclusion, not substantiated by the other evidence in the case. Furthermore, it can be considered only as pure speculation.

A similar situation was presented to the Court of Appeals of this district in the case of Advertiser's Exchange, Inc.. v. Bleich, 40 Abs 212 (1943). The following from p. 216 of the opinion discloses the similarity of the evidence:

"One witness, Alpha M. Bond, testified that she was the treasurer of plaintiff company and that as such she received and passed on the con-

tract when mailed in to the company by their traveling representative and immediately thereafter notified the defendant that the contract was accepted. She did testify that the damages incurred by the plaintiff amounted to the full contract price of $182.00. This can be considered nothing more than a conclusion and the evidence does not sustain such a conclusion.

Counsel for plaintiff-appellee argues that profits would be an element to take into consideration of damages and in support of this argument cites 15 Am. Jur. p. 561, par. 151. The citation aptly supports the argument but the difficulty is that the plaintiff presented no evidence from which the question of profit could be determined "

It is the Court's opinion that the same situation is here presented.

It is firmly established that the Court may not speculate in allowing damages for breach of a contract nor may it award damages based solely on evidence that is speculative. In other words profits or speculative damages are not recoverable. See **Champion Ice Manufacturing and Cold Storage Company v. Pennsylvania Iron Works Co., 68 Oh St 229 at p. 235.** At the same page of that case we find this language:

"The recovery of lost profits in the present case would involve the local condition of the markets, peculiarity of the ice company's business, its ability to substitute other machinery for the disabled machine, and other elements of injury not arising naturally from the breach of the contract nor presumably within the contemplation of the parties as the result of the breach."

Many of those factors are applicable to the claim in the present case and, therefore, place the claim for lost profits herein, in the realm of speculation. For a thorough discussion of the same subject, see **13 O. Jur. pp. 151-161.**

The damages claimed herein are not only speculative but plaintiff has, by the same token, failed to sustain the burden of proving at least one of the elements necessary to recovery. In **Allen, Heaton and McDonald, Inc., v. Castle Farm Amusement Co., 151 Oh St 522,** the Court held as follows in **Syl. 3:**

"In such a case (breach of contract), plaintiff has the burden of alleging and proving not only (a) what he would have received under the contract from the performance so prevented, but also (b) what such performance would have cost him (or the value to him of relief therefrom). Unless he proves both of those facts, he cannot recover as damages the profits he would have earned from full performance of the contract."

For the reasons already discussed, it is our opinion that plaintiff has not **proved** what he would have received under the contract from the performance so prevented.

There is some definite evidence in the record as to profits due plaintiff over a period of about five months in the latter part of 1950 and the first two months of 1951. Checks totalling $1674.30 were sent to plaintiff by defendant but returned by plaintiff. (Record p. 59.) That is the only amount established by the evidence as being due plaintiff under the contract.

The Court therefore finds that plaintiff recover from defendant the sum of $1674.30, together with his costs. Entry may be drawn accordingly.