MCDONALD, APPELLEE, v. BEDFORD DATSUN, APPELLANT.

(No. 54819—Decided
January 23, 1989.)

*Gary S. Andrachik,* for appellee.
*Howard S. Stern,* for appellant.

PATTON, J. This is an appeal from a judgment rendered by the trial court on plaintiff-appellee Judy McDonald's claims for breach of contract and violations of the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.* The court found that defendant-appellant Bedford Datsun ("Bedford") had committed unfair or deceptive acts under the statute by lowering the trade-in price of plaintiff's automobile as a guise by which Bedford could evade its automobile sales contract with plaintiff. The court awarded plaintiff treble damages amounting to $6,285.15, plus $500 in attorney fees. Bedford now appeals, assigning the following errors for review:

"I.   The lower court erred in finding Bedford breached the sales contract and not plaintiff.

"II.   The lower court erred in finding Bedford had no reasonable basis for lowering the trade-in value of plaintiff's Cimarron.

"III.   The lower court erred in finding Bedford's conduct a violation of the Ohio Consumers Sales Practices Act.

"IV.   The lower court decision is contrary to the manifest weight of the evidence."

In February 1985, plaintiff and Bedford entered into a sales contract for an automobile. Delivery of the automobile was to be made in the middle part of April 1985, and the deal would be closed at that time in order to accommodate financing arrangements by plaintiff. Plaintiff agreed to trade in a 1982 Cadillac Cimarron for $6,300, with the condition that the trade-in was subject to reappraisal at the time the new automobile was delivered. A $100 deposit was made.

On March 14, 1985, Bedford informed plaintiff that it had received an automobile of the kind she had agreed to purchase. Plaintiff was satisfied with the automobile, but was unable to consummate the deal since her financing arrangements were not complete. That automobile was sold to another purchaser.

Bedford telephoned plaintiff on April 17 to inform her that her automobile had been shipped from Chicago prior to that date. That same day, plaintiff travelled to Bedford and visited with the salesperson handling the transaction. The salesperson inspected the trade-in due to plaintiff's concerns that added mileage might reduce the trade-in allowance. The salesperson, though not the used car appraiser, assured plaintiff that added mileage would not affect the trade-in allowance.

On May 4, plaintiff was advised that her automobile had not arrived, but was requested to bring her trade-in automobile for a reappraisal. The appraiser devalued the trade-in by $500. Plaintiff protested and refused to accept her deposit back. She then proposed that the parties split the $500 difference, but Bedford refused, say-

ing it would not compromise. Plaintiff left the dealership after asking the salesperson to telephone her as soon as the new automobile arrived.

On May 8, plaintiff telephoned Bedford to advise it that she would accept the devaluation of her trade-in. Bedford told her that her automobile had been delivered on May 6 and transferred in a lease transaction that same day. Bedford stated that it had cancelled the sales contract and refunded her deposit. Plaintiff received the refund on May 8. Bedford sold the new automobile for the same price as contracted for by plaintiff, but with no trade-in involved.

Following a trial without a jury, the court found that Bedford was in possession of plaintiff's automobile on May 4 and that Bedford's representations that the automobile did not arrive until May 6 were unbelievable. The court found that Bedford sold plaintiff's automobile to another party because it received a better bargain. By lowering the trade-in value of the Cadillac, without any direct probative evidence to support that devaluation, Bedford attempted to evade its contract with plaintiff. The court concluded that there was no breach by plaintiff.

I

In its first assigned error, Bedford complains that the trial court erred in finding that Bedford, not plaintiff, had breached the sales contract. Bedford argues that plaintiff's refusal to pay, and her subsequent offer to split, the additional $500 on the trade-in constituted an anticipatory repudiation of the existing sales contract that excused performance on Bedford's part.

An anticipatory breach of contract by a promisor is a repudiation of the promisor's contractual duty before the time fixed for performance has arrived. *Smith* v. *Sloss Marblehead Lime Co.* (1898), 57 Ohio St. 518, 49 N.E.

695. The repudiation must be expressed in clear and unequivocal terms; "[a] mere request for a change in the terms or a request for cancellation of the contract is not in itself enough to constitute a repudiation." 4 Corbin, Contracts (1951) 905-906, Section 973; *Gilmore* v. *American Gas Machine Co.* (C.P. 1952), 70 Ohio Law Abs. 569, 570-571, 129 N.E. 2d 93, 94-95; *Ernie's Pizza, Inc.* v. *Myeroff* (Apr. 25, 1985), Cuyahoga App. No. 49017, unreported.

The sales contract signed by the parties provides in relevant part:

"2. If the used car is not to be delivered to the dealer until the delivery of the new car, the used car shall be reappraised at that time and such reappraisal value shall determine the allowance made for such used car * * *."

When plaintiff's trade-in was reappraised on May 4, she was under no present duty to perform her obligations under the sales contract since Bedford had not tendered delivery of the new automobile. Moreover, there was no clear and unequivocal manifestation of intent to repudiate since plaintiff refused to have her deposit refunded. In fact, her uncontroverted testimony shows that she left Bedford on May 4 with instructions that she be telephoned as soon as the automobile arrived, thus manifesting an intention to fulfill her obligations under the contract. Bedford's argument that plaintiff's proposed compromise on the trade-in devaluation constituted a counteroffer lacks merit. The compromise sought modification of the terms of the contract and not repudiation of the entire bargain. It follows that the trial court properly determined that Bedford breached its sales contract. The first assigned error is overruled.

II

The second and third assigned er-

rors raise issues concerning the trial court's conclusion that Bedford had violated the Ohio Consumer Sales Practices Act. Bedford argues that the trade-in's lower value of $5,800 was still higher than the trade-in allowance offered by the dealership that ultimately accepted plaintiff's trade-in.

R.C. 1345.05(B)(2) provides that the Director of Commerce may adopt substantive rules defining acts or practices that violate R.C. 1345.02, relating to unfair or deceptive acts or practices in connection with a consumer transaction. Pursuant to that authority, Ohio Adm. Code 109:4-3-16(B) was adopted and provides in relevant part:

"It shall be a deceptive and unfair act or practice for a dealer, in connection with the * * * sale of a motor vehicle, to:

"* * *

"(18) Lower or attempt to lower the price of a trade-in vehicle unless there exists *a reasonable basis for such re-evaluation based upon* change to that vehicle due to accident, failure of or damage to major components, removal or substitution of equipment or accessories or *the market value of that vehicle at the time of the re-evaluation*[.]" (Emphasis added.)

The trial court concluded that there was no competent evidence to support the reappraisal of plaintiff's trade-in at a lower market value. Bedford made no attempt to justify either trade-in allowance during trial. Indeed, its witness could only competently testify that he had assured plaintiff that the added mileage on the trade-in would not affect its original appraised value.

Bedford's assertion that the trade-in allowance ultimately assessed by the dealership that accepted the trade-in justified the devaluation lacks merit. Bedford failed to prove a reasonable basis for the devaluation at the time it was made. Plaintiff had testified that

she visited several different dealerships seeking an appraisal of her trade-in. Bedford's appraisal was significantly higher than the other dealerships'. It was the primary reason that plaintiff entered into a new automobile sales contract with Bedford. The unexplained devaluation of the trade-in was found to be a guise to avoid consummating a less lucrative deal. Even if the subsequent trade-in allowance more accurately reflected the true market value of the trade-in, that figure would be irrelevant to demonstrate a reasonable basis for the re-evaluation that occurred on May 4. Given the total lack of any competent evidence on that point, the trial court did not err in its conclusions.

Finally, Bedford argues that the Ohio Consumer Sales Practices Act is not applicable since no sale was consummated. The term "consumer transaction" was defined in R.C. 1345.01(A) as "* * * a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, franchise, or an intangible * * * to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." It is not necessary that a sale actually take place. *Weaver* v. *J. C. Penney Co.* (1977), 53 Ohio App. 2d 165, 168-169, 6 O.O. 3d 270, 272, 372 N.E. 2d 633, 635. In this case, Bedford's actions in negotiating its sales agreement amounted to solicitation. Accordingly, the Consumer Sales Practices Act is applicable. The second and third assigned errors are overruled.

## III

The fourth assigned error complains that the judgment was against the manifest weight of the evidence. To the extent this assigned error argues matters raised in the prior assigned errors, we need not reiterate our conclusions. Mindful that judg-

ments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by this court as being against the manifest weight of the evidence, we find no error. *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus. The fourth assigned error is overruled.

*Judgment affirmed.*[1]

PARRINO, J., concurs.

KRUPANSKY, J., concurs in judgment only.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.

---

[1] In her reply brief, plaintiff asserts a "cross-appeal" that raises one assignment of error challenging the sufficiency of her award of attorney fees. We lack jurisdiction to address that contention, however, since plaintiff did not timely file a notice of cross-appeal. App. R. 4(A); *Kaplysh* v. *Takieddine* (1988), 35 Ohio St. 3d 170, 519 N.E. 2d 382, syllabus.