DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Telsat, Inc., appeals the judgment of the Summit County Court of Common Pleas that overruled Telsat's objections to a magistrate's decision and entered judgment in favor of Plaintiff-Appellee, The Cambridge Company. We affirm.
 {¶ 2} In 2001, Telsat purchased the assets of an entity doing business as Solaire, a beauty salon in Hudson, Ohio. Telsat continued to do business as Solaire in the same location, a retail complex owned by Cambridge located at 85 South Main Street. On July 5, 2001, Telsat and Cambridge executed a five-year lease for two suites in the facility. The lease provided that "[t]he Premises are to *Page 2 
be kept open for business and used by TENANT continuously during the term of this LEASE for the operation of a Tanning/Clothing/Nails Spa Business with related items." In 2004, Cambridge's owner, Duane Hills, learned that Telsat had signed a lease for the rental of space in the newly-developed First and Main retail area in Hudson and that Telsat planned to relocate the Solaire business to that location. On October 13, 2004, Hills sent a letter to Caroline Mueller, Telsat's CEO, inquiring about its intentions. Telsat did not respond.
 {¶ 3} On November 12, 2004, Cambridge filed this action against Telsat in the Summit County Court of Common Pleas alleging breach of contract. Cambridge sought an injunction prohibiting Telsat from "removing] the furniture, fixture and equipment located on the Premises," damages, and attorney's fees. Cambridge filed an amended complaint on March 18, 2005, that clarified that its cause of action for breach of contract was premised on Telsat's anticipatory repudiation of the lease. Cambridge moved for leave to file a second amended complaint on June 12, 2006, in which it alleged that Telsat also breached the terms of the lease by (1) vacating the premises before the end of the lease term and removing certain property from the premises; (2) failing to repair damage to the premises; and (3) failing to pay rent for the month of June 2006. On July 19, *Page 3 
2006, Telsat answered and asserted a counterclaim against Cambridge alleging breach of contract.[1]
 {¶ 4} The matter was referred to a magistrate pursuant to Civ.R. 53 and was tried to the bench on November 26, 2006. On December 14, 2006, the magistrate issued a decision finding that Telsat breached the lease by failing to repair damage to the premises, failing to remove modifications to the suite in order to restore it to its original condition, and removing of certain property that was present in the suite when Telsat took possession. The magistrate determined that Cambridge had proved damages of at least $6,800 due to the breach. The magistrate also concluded that Telsat committed an anticipatory repudiation of the contract and awarded nominal damages of $300. The magistrate concluded that judgment should be awarded to Cambridge in the amount of $7,100 less the $4,000 security deposit paid by Telsat, and that Cambridge was entitled to attorney's fees yet to be determined.
 {¶ 5} Telsat filed objections pursuant to Civ.R. 53(D)(3). Cambridge responded in opposition and objected to the magistrate's subtraction of Telsat's security deposit from the award of damages. While the objections were pending, the magistrate conducted a hearing on Cambridge's demand for attorney's fees *Page 4 
and issued a decision on March 12, 2007. The magistrate concluded that "[Cambridge's] claim for attorney's fees in the amount of $22,410.06 for 89.64 hours were [sic] fair, reasonable and otherwise consistent with guidelines a court must consider in evaluating an attorney's fees claim." Telsat filed a second set of objections, and Cambridge responded. On September 28, 2007, in a twenty-four page order, the trial court overruled each of Telsat's objections and Cambridge's objection; adopted the findings of the magistrate; and entered judgment in favor of Cambridge:
 "Entering this Court's own judgment and setting forth the outcome of the dispute and the remedy provided, this Court hereby finds that [Telsat] breached the lease with [Cambridge] by failing to return the premises to a vanilla box condition, and that [Cambridge] suffered actual damages in an amount of $6,800.00 for that breach. [Cambridge] proved its claim for anticipatory repudiation of the contract and this Court awards nominal damages in the amount of $300.00. Therefore, the total judgment for [Cambridge] is $7,100.00."
Telsat timely appealed, raising four assignments of error. Telsat's first, second, and fourth assignments of error challenge the trial court's action overruling its objections to the magistrate's December 14, 2006, decision on the merits of the case. Telsat's third assignment of error challenges the trial court's action regarding the magistrate's March 12, 2007, decision regarding attorney's fees.
 STANDARD OF REVIEW {¶ 6} Civ.R. 53(D)(4)(d) describes a trial court's action once objections to a magistrate's decision have been made: *Page 5 
 "Action on objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."
This Court reviews a trial court's order ruling on objections to a magistrate's decision for abuse of discretion. Medina Drywall Supply,Inc. v. Procom Stucco Sys., 9th Dist. No. 06CA0014-M, 2006-Ohio-5062, at ¶ 5. Under this standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable — not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Alleged errors must relate not to the magistrate's findings or decision, but to the action of the trial court. Berry v. Firis, 9th Dist. No. 05CA0109-M, 2006-Ohio-4924, at ¶ 7, quoting Mealey v.Mealey (May 8, 1996), 9th Dist. No. 95CA0093, at *2.
 ASSIGNMENT OF ERROR I "The trial court erred to the prejudice of [Telsat] when it adopted the magistrate's finding that [Telsat] had anticipatorily repudiated the lease."
 {¶ 7} Telsat's first assignment of error argues that the trial court abused its discretion by adopting the magistrate's finding that Telsat committed an anticipatory repudiation of the lease by publicly communicating its intention to relocate Solaire's operations to another location and by ceasing to do business other than by appointment. Specifically, Telsat maintains, as it did in its ninth objection to the magistrate's decision, that (1) an announcement contained in a *Page 6 
newspaper is not the type of evidence that can establish anticipatory repudiation; and (2) advertisement of its intention to do business by appointment only was not evidence of breach.
 {¶ 8} When a party to a contract declares that he or she will not perform the terms of the contract, an anticipatory repudiation occurs and the injured party can immediately maintain an action for breach. SeeW.O.M., Ltd. v. Willys-Overland Motors, Inc., 6th Dist. No. L-05-1201,2006-Ohio-6997, at ¶ 30. "To prevail on a claim of anticipatory breach of contract, a plaintiff must establish that there was a contract containing some duty of performance not yet due and, by word or deed, the defendant refused future performance, causing damage to the plaintiff." Banks v. Bob Miller Builders, Inc. (Dec. 18. 2001), 10th Dist. No. 01AP-582, at *3, citing McDonald v. Bedford Datsun (1989),59 Ohio App.3d 38, 40. A request for cancellation or for a change in the terms of an agreement is insufficient, and "[t]he repudiation must be expressed in clear and unequivocal terms[.]" McDonald,59 Ohio App.3d at 40, quoting 4 Corbin, Contracts (1951) 905-906, Section 973. Anticipatory repudiation of a contract has been found where there is an overt action indicating that performance will not be tendered. See, e.g., Farmers Comm. Co. v. Burks (1998), 130 Ohio App.3d 158, 173;Integra Nat. Bank v. Oakes Const. Co. (Mar. 9, 1994), 9th Dist. Nos. 16248, 16281, 16300, at *7; Wilson v. Board of Trustees of Ohio StateUniv. (Dec. 24, 1991), 10th Dist. No. 91AP-144, at *15-16. Indirect inferences are not sufficient. *Page 7 
See Sentinel Consumer Prod. Inc. v. Mills, Hall, Wallborn Assoc, Inc. (1996), 110 Ohio App.3d 211, 213-215.
 {¶ 9} In this case, the trial court noted:
 "Mueller admitted that the lease with Plaintiff ran until June 30, 2006. Mueller further admitted that [Telsat] was obligated not to move out before the end of the lease term. Mueller admitted that Solaire signed a new lease on August 4, 2004 and that the terms of the new lease prohibited a similar business within a five mile radius of the new premises."
The trial court also considered Ms. Mueller's contradictory statements regarding statements to the media and her receipt of Mr. Hills' October 13, 2004, letter inquiring about her intentions, to which she did not respond. Having reviewed the evidence and the magistrate's conclusions, the trial court determined that Ms. Mueller's overt actions communicated Telsat's intention to breach the lease:
 "The evidence presented at trial shows that [Telsat] clearly intended to open the salon at their new location prior to the end of the lease term with [Cambridge]. The fact that [Telsat] continued to pay rent for the term of the lease does not change the other actions taken by [Telsat] that show that it was prepared to end the lease prior to the expiration of the lease term."
Overt actions and the inferences that may be drawn from them can communicate the intention to repudiate obligations under a contract directly and unequivocally no less than written or oral statements to that effect. The trial court did not abuse its discretion by overruling Telsat's objection and adopting the magistrate's finding that Telsat committed an anticipatory repudiation of the lease. Telsat's first assignment of error is overruled. *Page 8 
 ASSIGNMENT OF ERROR II "The trial court erred to the prejudice of [Telsat] when it adopted the magistrate's award of nominal damages."
 {¶ 10} Telsat's second assignment of error is that the trial court abused its discretion by adopting the magistrate's recommendation and awarding nominal damages of $300 for Telsat's anticipatory breach of the lease. In essence, Telsat reiterates its arguments that no anticipatory breach occurred and, therefore, that nominal damages were inappropriate in the absence of "a technical breach." In the alternative, Telsat argues that the $300 award is unjustified and beyond the scope of nominal damages.
 {¶ 11} Nominal damages may be awarded where an injury has been proven but the evidence fails to establish the extent of loss to the plaintiff.Lacey v. Laird (1956), 166 Ohio St. 12, paragraph two of the syllabus. When a plaintiff in a breach of contract action proves breach at trial but fails to prove actual damages, the trial court may award nominal damages, but is not required to do so in every case. DeCastro v.Wellston Cty. School Dist. Bd. of Edn. (2002), 94 Ohio St.3d 197, 199.
 {¶ 12} This Court has upheld an award of nominal damages in the amount of $50, Thomas v. Papadelis (1984), 16 Ohio App.3d 359, 360; $150,Weaver v. Fenwick (July 2, 1997), 9th Dist. No. 17995; and two dollars per day for 241 days, Manda v. Steinmetz (Oct. 15, 1986), 9th Dist. No. 12632, at *2. Conversely, an award of $1,000 has been found to be excessive, Grakoe Systems, Inc. v. Koehler *Page 9 
(Feb. 23, 1988), 4th Dist. No. 86 CA B, at *4, as has an award of $500.Bunte v. Talbott (Sept. 14, 1976), 10th Dist. Nos. 76AP-300 76AP-349, at *3. In this case, we are not persuaded that the trial court's decision to overrule Telsat's objection to the award of nominal damages demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." See Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. Telsat's second assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "The trial court erred to the prejudice of [Telsat] when it ignored the provisions of the lease and adopted the magistrate's finding that [Cambridge] had been damaged to the amount of $6,800."
 {¶ 13} Telsat's fourth assignment of error is that the trial court abused its discretion by overruling its objections to the magistrate's decision awarding $6,800 in damages to Cambridge on its breach of contract claim. Specifically, as also set forth in Telsat's fifth, seventh, and eight objections to the magistrate's decision, Telsat maintains that the magistrate misconstrued certain items as fixtures, resulting in an inaccurate assessment of damages.
 {¶ 14} Two sections of the lease are relevant to this discussion. Section VI provides, in part:
 "Any and all alterations, additions, improvements, and fixtures except trade fixtures which TENANT shall be permitted to remove from the leased Premises at any time during the term hereof or within five (5) days after expiration or sooner termination of this LEASE and not otherwise if such removal can be effected without injury to the lease premises and if any such fixture shall not have *Page 10 
become, by the manner in which it is affixed, an integral part of the leased premises, made or placed in or on said premises shall on expiration, or sooner termination of this LEASE, belong to LANDLORD without compensation to TENANT, provided, however, that LANDLORD shall have the option, to be exercised on expiration or sooner termination of this LEASE, to require TENANT to remove any or all of such additions, improvements, or fixtures inside or outside the building."
Section XXII provides:
 "SURRENDER OF PREMISES: TENANT shall, without demand therefor and at TENANT'S own cost and expense immediately upon expiration or sooner termination of the term hereof or of any extended term hereof remove all property belonging to TENANT and any and all alterations to the building or property, additions, or improvements, and fixtures or structures which by the terms hereof TENANT is permitted to remove, repair all damage to the leased premises caused by such removal, and restore the leased premises to the condition they were in prior to the installation of the items and/or property so removed. Any property, or improvements or alterations not so removed shall be deemed to have been abandoned by TENANT and may be retained by LANDLORD or disposed of by LANDLORD at TENANT'S expense. Keys shall be delivered to LANDLORD'S office."
The plain language of these sections indicates that the tenant has the responsibility to remove all trade fixtures (which a tenant is permitted to remove if the conditions described in Section IV are met) from the premises and to repair and restore the condition of the property after their removal. Section IV explains that, while trade fixtures are generally able to be removed, that is not the case when doing so causes injury to the premises or when the fixture has "become, by the manner in which it is affixed, an integral part of the leased premises[.]" *Page 11 
 {¶ 15} The magistrate's conclusions are illustrative in this regard, noting that it was Telsat's inconsistency with regard to what objects it removed — and the lack of care with which it removed them — that underpinned the award:
 "It is specifically found that [Telsat], based upon the totality of the evidence, had concluded that it was the owner of the various fixtures removed to include the sink, the various cupboards, and counters that were attached to the lease hold [sic]. It is further concluded that [Telsat], when it vacated the premises, selectively chose such fixtures it owned and that it wanted to remove for its own purposes, presumably at the new business site nearby, and abandoned other items to include what was purchased from its predecessor and what was installed by its predecessor.
 "* * *
 "The uncontradicted testimony provided by [Cambridge] is that, at a minimum, the cost of such correction to [Cambridge] was $6,800.00. Such cost is found to be at a bare minimum that which is necessary and reasonable to put the premises in compliance with Section XXII, "Surrender of the Premises," for which [sic] [Telsat] had the responsibility to accomplish on its own. * * * [Cambridge's] evidence to establish any amount over the $6,800.00 fails by a wide margin."
 {¶ 16} The trial court's decision overruling Telsat's objection to this conclusion is based squarely on the language of Section XXII of the lease, which required Telsat to "restore the leased premises to the condition they were in prior to the installation of the items and/or property so removed." It is immaterial that the trial court coined the phrase "vanilla box" to describe this obligation, and the substance of the trial court's decision demonstrates that it did not abuse its discretion by adopting the magistrate's recommendations and decision regarding damages. Telsat's fourth assignment of error is overruled. *Page 12 
 ASSISGNMENT OF ERROR III "The trial court erred to the prejudice of [Telsat] when it allowed attorney fees."
 {¶ 17} Telsat's final assignment of error argues that the trial court abused its discretion by adopting the magistrate's recommendations with respect to attorney's fees and overruling Telsat's nine objections to the magistrate's March 12, 2007, decision. Telsat has argued on appeal that the award of attorney's fees could not be sustained because Cambridge failed to prove its claim of anticipatory repudiation. As set forth in our resolution of Telsat's first assignment of error, however, the trial court did not err by adopting the magistrate's conclusion that Cambridge proved its anticipatory repudiation claim. This aspect of Telsat's argument, therefore, is without merit. Telsat also argues that (1) Ohio law prohibits the enforcement of fee provisions in lease agreements, and (2) attorney's fees cannot be awarded on a claim for which the plaintiff received merely nominal damages.
 {¶ 18} The trial court awarded attorney's fees pursuant to Section XXIX.(E) of the lease, which provides that "[i]n the event TENANT breaches any of the terms of this LEASE whereby the LANDLORD employs attorneys to protect or enforce its rights hereunder and prevails, then TENANT agrees to pay LANDLORD'S reasonable attorneys' fees so incurred." Contrary to Telsat's assertion, Ohio law does not prohibit attorney's fee clauses in a commercial lease. Instead, a contractual provision awarding attorney's fees to a prevailing party is *Page 13 
enforceable "so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." Nottingdale Home Owners Ass'n., Inc. v.Darby (1987), 33 Ohio St.3d 32, syllabus. See, also, Keal v. Day,164 Ohio App.3d 21, 2005-Ohio-5551, at ¶ 5-9; R.C.H. Co. v. 3-J MachiningService, Inc., 8th Dist. No. 82671, 2004-Ohio-57, at ¶ 21; Luca v.Volunteers of America (June 19, 1985), 9th Dist. No. 3756, at *3-4. Consequently, as provided by the plain language of Section XXIX.(E), Cambridge was entitled to attorney's fees if it was the prevailing party in its action against Telsat, or the party "in whose favor the decision or verdict is rendered and judgment entered." See Keal at ¶ 8. The trial court awarded judgment in favor of Cambridge for both anticipatory breach and breach of contract and, as the prevailing party, it was entitled to reasonable attorney's fees for the entire action. The trial court did not abuse its discretion by adopting the magistrate's conclusion that attorney's fees were available under the terms of the lease.
 {¶ 19} The reasonableness of attorney's fees is determined with respect to the factors set forth in Rule 1.5(a) of the Ohio Rules of Professional Conduct, which provides:
 "The factors to be considered in determining the reasonableness of a fee include the following:
 "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; *Page 14 
 "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 "(3) the fee customarily charged in the locality for similar legal services;
 "(4) the amount involved and the results obtained;
 "(5) the time limitations imposed by the client or by the circumstances;
 "(6) the nature and length of the professional relationship with the client;
 "(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
 "(8) whether the fee is fixed or contingent."[2]
 {¶ 20} During the hearing on the matter of attorney's fees, counsel for Cambridge testified that he is a sole practitioner in Hudson, Ohio, with approximately thirty years of experience and that his practice focuses on commercial litigation. He stated that his fee is $250 per hour and presented evidence in the form of invoices detailing his work on this matter. Attorney Mark Weisman testified as an expert witness in support of Cambridge's calculation of attorney's fees after the parties stipulated to his qualification as an expert. Attorney Weisman noted that $250 per hour is "well within the range of *Page 15 
reasonable fees" for a practitioner of counsel's experience level in commercial litigation. He also observed that Cambridge's claims were "some degree over and above" the normal level of complexity and were "vigorously defended," meeting with "some impediments that just made * * * an extra extreme amount of work." He opined that attorney's fees of $15,228.20 through the completion of the trial on the merits and $6,800.00 post-trial were reasonable under the circumstances and not excessive.
 {¶ 21} Telsat challenged counsel's computation of fees on cross-examination and questioned Attorney Weisman's credibility, but did not offer expert testimony of its own. Having reviewed this record, the trial court concluded:
 "In the case at bar, this Court finds that all of the attorney fees were recoverable and can not be separated based on the intertwined nature of [Cambridge's] claims.
 * * *
 "Upon review of the pleadings, transcript and evidence presented, as well as the Court's own knowledge of the length and contentious nature of this case, this Court finds that the expert testimony presented by Attorney Weisman supports his Conclusion that the attorney fees generated by Attorney Hoover were reasonable and necessary in the pursuit of this case."
The trial court did not abuse its discretion in adopting the magistrate's conclusions regarding the reasonableness of attorney's fees in this case, and Telsat's third assignment of error is overruled. *Page 16 
 {¶ 22} Telsat's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
WHITMORE, J. DICKINSON, J. CONCUR.
[1] The trial court did not rule on Cambridge's motion for leave to amend the complaint, but the magistrate later determined that the motion was moot because Telsat answered and asserted a counterclaim, which was voluntarily dismissed during trial.
[2] The Ohio Rules of Professional Responsibility took effect on February 1, 2007. Rule 1.5 contains the language previously set forth in DR 2-106. *Page 1