OPINION
{¶ 1} This case arises from an award of summary judgment in a breach of contract action arising from a commercial lease. Appellee, Northway McGuffey College, Ltd., filed suit against Appellants, Ben and Lorraine Brienza, for breach of a commercial lease agreement following the relocation of Appellants' business. Appellants were operating a liquor store and carryout business. Appellee was awarded summary judgment and damages.
 {¶ 2} On appeal Appellants argue that the trial court's decision was in error, since genuine issues of material fact remain to be litigated. Appellants claim that Appellee breached the contract first by retaking possession of the leased premises in advance of the time authorized in the agreement. They claim that the trial court ignored the facts attested to by Ben Brienza in his affidavit. The record reflects that summary judgment was appropriate in this case. The evidence establishes that Appellants breached the contract when they removed the majority of the inventory from the store and posted a sign indicating that the business was moving to another location. The summary judgment decision is, therefore, affirmed.
 Facts and Procedural History {¶ 3} On January 25, 1997, Appellants entered into a written agreement with Appellee for the lease of premises in a plaza referred to as Unit 4 College Plaza, in Alliance, Ohio. This lease term was scheduled to begin when Appellants opened for business. The parties agreed that the lease term would expire on March 31, 2002. Appellants were to operate as "Alliance Liquor Agency and Carryout" in the leased premises during the five-year lease term. *Page 2 
 {¶ 4} In January of 2000, Appellee learned that Ben Brienza was in the process of moving the Alliance Liquor business from 1150 E. State Street to another location situated at 546 South Union Avenue, also in Alliance. Appellants had sought approval from the Alliance City Council to relocate the liquor establishment. Appellee sent Appellants a letter on February 1, 2000, stating that a move of the business to 546 South Union Avenue would be considered a default on the lease.
 {¶ 5} In October of 2000, Appellants' storefront sign was removed. Upon inquiry, Appellant advised Appellee that it was removed for temporary repairs. On January 12, 2001, Appellee demanded that Appellant re-hang the sign, and Appellant agreed to replace it by February 1, 2001.
 {¶ 6} On January 21, 2001, Appellee's agent Thomas J. Poplar learned through a phone conversation that workers were removing the merchandise from Appellants' business and loading it onto a truck.
 {¶ 7} Appellants did not open their business on January 21, 2001, or the next day, January 22, 2001. On January 22, 2001, Poplar saw and photographed a sign in Appellants' store front window that read, "WE'RE MOVING!! 546 S. UNION, January of 2001." (Poplar Affidavit, Attachment 2.)
 {¶ 8} On January 24, 2001, Poplar went to the store to secure the premises and found two workers in the process of removing a neon sign from the store's window. Poplar advised the men that the landlord was taking possession of the premises. *Page 3 
 {¶ 9} On January 25, 2001, Poplar confirmed that Appellants' business, Alliance Liquor Agency Carryout, was open for business at a new location that was 1.9 miles from its College Plaza location.
 {¶ 10} On February 5, 2001, Appellee filed suit against Appellants Ben Brienza and Lorraine Brienza seeking damages for breach of the written lease agreement based on failure to maintain proper signage, failure to keep the store open for business, and failure to keep the store stocked and illuminated. Appellee also claimed breach of the lease based on Appellants' agreement not to operate a similar business within a five mile radius.
 {¶ 11} In response, Appellants filed two counterclaims. First they claimed they were entitled to damages based on the fact that Appellee locked them out of the premises, denied them the opportunity to operate their business, and forced them to pay rent at an alternative location. Second, they sought damages for inventory and property that remained in the store at the time they were locked out of the leased premises.
 {¶ 12} Following discovery, Appellee filed its motion for summary judgment on January 31, 2002. Appellants filed their brief in opposition but did not attach any evidentiary support, and the magistrate overseeing the case awarded Appellee summary judgment as a matter of law on March 7, 2007. The trial court subsequently overruled Appellants' objections to the magistrate's decision and adopted the magistrate's decision. (July 23, 2007, Judgment Entry.) *Page 4 
 {¶ 13} Following a timely appeal, however, we determined that the trial court's July 23, 2007, Judgment Entry was not a final, appealable order since the "mere adoption of a Magistrate's Decision is not a final appealable order." (Sept. 11, 2007, Journal Entry.) Thus, the appeal was held in abeyance until the parties secured a final judgment on October 12, 2007. The trial court rendered its final judgment following a damages hearing held October 11, 2007, to assess damages owed pursuant to Clause Six of the Lease and in compliance with the magistrate's prior decision.
 {¶ 14} In Appellants' sole assignment of error on appeal they assert:
 {¶ 15} "THE TRIAL COURT ERRED WHEN IT GRANTED PLAINTIFF SUMMARY JUDGMENT ON ALL CLAIMS PRESENTED WHEN THERE REMAIN ISSUES OF MATERIAL FACT THAT ARE STILL IN DISPUTE."
 {¶ 16} As an appellate court, we review a summary judgment decision de novo. Thus, we review the same standards and evidence as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,506 N.E.2d 212. Further, since summary judgment is a procedural device to terminate litigation, it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 17} Civ. R. 56(C) provides in part:
 {¶ 18} "A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party *Page 5 
against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 19} Civ. R. 56(C) requires a court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment. In considering the merits of Appellee's motion for summary judgment, the evidence before the trial court included a certified copy of the parties' lease agreement, the affidavit and attached exhibits of Appellee's agent, Thomas J. Poplar, the affidavit of Appellant Ben Brienza, and the deposition transcript of Ben Brienza.
 {¶ 20} In Appellants' brief in opposition to summary judgment, Ben Brienza claimed to have faithfully complied with the terms and conditions of his prior lease agreement. Brienza alleged that he was merely exploring options for relocating his business during the third year of his five-year contract with Appellee in an effort to secure a better bargaining position to negotiate a new lease with Appellee and to have options in the event that he did not agree on new lease terms with Appellee. The averments fell short of denying that Ben Brienza was planning on relocating his business.
 {¶ 21} Ben Brienza also alleged that he temporarily removed his store front sign for reasons of repair and that Appellee permitted him to re-hang it on or before February 1, 2001.
 {¶ 22} He further claimed that he paid his January 1, 2001 monthly rent and continued to conduct business until January 22, 2001. He confirmed that Appellee took possession of the premises and changed the locks on January 24, 2001. *Page 6 
(2/28/02, Defendant's Brief in Opposition to Plaintiffs Motion for Summary Judgment.)
 {¶ 23} Ben Brienza's deposition testimony is enlightening. He claimed during his deposition that he planned to sell liquor at both locations, i.e., his College Plaza location in addition to his new location, until the lease agreement with Appellee was complete. He claimed that the State of Ohio advised him that he would need two state liquor licenses to operate at both locations. He alleged that he intended to continue selling wine products that had not been moved from the store, and that he intended to keep paying his rent, but for the fact that he was locked out of the store. (Ben Brienza Depo., pp. 23, 95, 109.)
 {¶ 24} Ben Brienza also indicated in his deposition that he believed that Appellee was in default or had breached the lease agreement based on the fact that the landlord did not allow him to "re-open" his business. Brienza testified that he told Poplar that he would re-open the business, but Poplar said that was not an option because he was in default. Poplar secured the premises and advised Brienza that he would be arrested if he stayed. (Ben Brienza Depo., pp. 113, 116-117.)
 {¶ 25} On Sunday January 21, 2001, Ben Brienza moved most of the inventory from the College Plaza location to the new location. He acknowledged hanging a sign in the storefront that day that stated, "We're Moving". (Ben Brienza Depo., pp. 105-108.) Brienza ceased paying his rent in February, 2001.
 {¶ 26} Ben Brienza stated in his deposition that he believed Appellee's agent removed the cases of wine that he had left in the store. Based on his inventory of *Page 7 
the remaining wine, shelving, coolers, ice machine, wine racks, and freight scale, Brienza estimates that Appellee owed him approximately $41,000.00.
 {¶ 27} Mr. Poplar provided an affidavit for the record. Poplar averred that he discovered Appellants' store front sign was missing in October of 2000. Appellee ordered the sign to be replaced, and Ben Brienza promised to replace the sign by February 1, 2001. On January 21, 2001, Poplar learned that Appellants had been removing the merchandise from the leased store, and the next day, Poplar saw and photographed a sign in the window that indicated that the business was moving to another location. Poplar also stated that when he left the Appellants' store on January 24, 2001, there were still about "200 boxes of loose wine product" in the store, and he took photos of the contents of the store on this date.
 {¶ 28} A review of the parties' written lease agreement reveals that the lease term was five years, starting on April 1, 1998. The rent was based on a fixed amount per month plus a percentage of Appellants' gross sales. Appellants promised to keep the premises "continuously and uninterruptedly open for business" Monday through Saturday. (Lease, p. 7A.) Appellants promised that they would not, "either within the Shopping Center * * * or within five (5) miles of the Shopping Center * * * directly or indirectly own, operate or be financially interested in, either itself or with others, a business like or similar to the business authorized to be conducted under the terms of this Lease." (Lease, p. 7A.)
 {¶ 29} The record reveals a litany of lease violations by Appellants. First, they removed their storefront sign from the Shopping Center. Second, they entered into a *Page 8 
new agency contract with the State of Ohio to relocate their business to 546 South Union Avenue, which was within five miles of the leased premises (it is approximately two miles away). Third, they removed merchandise from their business to the new location at 546 South Union Avenue. Fourth, they failed to maintain the premises in such a manner that it could even be open for business. Fifth, they posted in a sign in their store windows stating that they were moving to 546 South Union Avenue in January of 2001. Sixth, they failed to open for business on January 21st or 22nd. Sixth, the new store at 546 South Union Avenue opened and was fully operational even though Appellants were still bound by the terms of the original lease with Appellee. These are only some of the more obvious breaches of the lease agreement.
 {¶ 30} Furthermore, Appellants did not attempt to deny some of the more egregious breaches of the lease. They did not deny that they were operating a new location at 546 South Union Avenue. They did not deny that they had removed some or most of their merchandise to that location. They did not deny that their original leased storefront was in such a state of disarray, due to the disruptions caused by the move, that it could not be operated as a business.
 {¶ 31} Additionally, Appellants did not deny that they had applied for and received approval from the State of Ohio to relocate their liquor license to 546 South Union Avenue. Ben Brienza fully acknowledges that he received a new liquor license from the State of Ohio to operate at a new location starting on January 22, 2001. (Ben Brienza Depo., p. 21.) This act alone would be considered a breach *Page 9 
sufficient to terminate the lease agreement, since Appellants could not operate their liquor store in the College Plaza location without a liquor license. The new agreement with the State of Ohio stated that the new liquor license would be effective starting January 22, 2001. Ben Brienza also testified that he fully planned on selling liquor at both locations until the lease with Appellee expired. (Ben Brienza Depo., p. 23.)
 {¶ 32} There is no reasonable interpretation of the evidence that could support Appellants' arguments that they had not breached the lease on or about the time Appellee took steps to repossess the leased premises. Although there may have been some dispute about whether Appellants were given more time to re-hang their business sign, this does not create any material dispute over the many other breaches of the lease.
 {¶ 33} As regards Appellants' second counterclaim, concerning the alleged conversion claim for unspecified personal property, they argue that they were not the first party to breach the lease. They argue that Appellee breached the lease by retaking the premises and changing the locks. Therefore, they believe they are entitled to damages for Appellee's breach of the lease. As explained above, there is no evidence whatsoever that Appellee breached the lease by prematurely retaking possession of the premises. Even if we were to distort the facts beyond all reason and accept that Appellants were only planning on moving their business, but had not actually done so, this would constitute a breach by anticipatory repudiation and would have allowed Appellee to retake the premises. "An anticipatory breach of *Page 10 
contract by a promisor is a repudiation of the promisor's contractual duty before the time fixed for performance has arrived." McDonald v.Bedford Datsun (1989), 59 Ohio App.3d 38, 40, 570 N.E.2d 299. "The repudiation must be expressed in clear and unequivocal terms[.]" Id. Appellants began expressing their desire to breach the lease in January of 2000, and then provided an array of indications that they were going to follow through on their intention to move to a new location. They removed their sign and their merchandise, they stopped opening or even turning on the lights in their store, they changed their liquor license, and they put a sign in their window saying they were moving. One could hardly ask for more explicit evidence of anticipatory breach.
 {¶ 34} "`[W]hen a contracting party repudiates the contract prior to the time that such party's performance is due, an "anticipatory breach" or, more precisely, an "anticipatory repudiation" occurs, and the injured party has an immediate action for damages for total breach. Farnsworth, Contracts (1982) 627-628, Section 8.20.' Farmers Comm. Co.v. Burks (1998), 130 Ohio App.3d 158, 172, 719 N.E.2d 980. The nonbreaching party may also rely on the anticipatory repudiation as a defense against a subsequent breach-of-contract claim. PremiumEnterprises, Inc. v. T.S., Inc. (Feb. 9, 1999), 9th Dist. No. 2751-M,1999 WL 61488; 13 Williston on Contracts (4th Ed. 2000) 668, Section 39:37." Daniel E. Terreri Sons, Inc. v. Mahoning Cty. Bd. ofCommrs., 152 Ohio App.3d 95, 2003-Ohio-1227, 786 N.E.2d 921, ¶ 44.
 {¶ 35} Further, Appellee is correct that the lease excused Appellee from any liability for any loss or damage to Appellants' personal property, including inventory, *Page 11 
"caused in any manner whatsoever." (Lease, p. 17.) The lease also gave Appellee a security interest in Appellants' personal property and inventory. Thus, even if Appellee exercised dominion and control over abandoned inventory, this could not be categorized as a "conversion" of property. "Conversion" is defined as the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights."Zacchini v. Scripps-Howard Broadcasting Co. (1976), 47 Ohio St.2d 224,226, 1 O.O.3d 129, 351 N.E.2d 454. If a party has a contractual right to control and possess property based on the terms of a lease, then the control and possession is not wrongful and is not conversion. A security interest in property operates as a defense to a conversion claim.Blon v. Bank One, Akron, N.A. (1988), 35 Ohio St.3d 98, 103,519 N.E.2d 363. While the value of the property as a security interest might be disputed by the parties, this dispute has nothing to do with a claim for conversion. Appellants' second counterclaim was for conversion, and there is no basis for that claim evidenced by the facts in the record.
 {¶ 36} Appellants clearly breached the lease agreement in several respects, and they provided no evidence in rebuttal to create any disputed genuine issues of material fact. As to their conversion claim, Appellants were liable for any loss to personal property under the terms of the lease, and Appellee was entitled to a security interest in any personal property on the premises. There was nothing wrongful about Appellee removing leftover bottles of wine in the store once they retook possession of the lease premises, and thus, there was no possible conversion *Page 12 
claim. The trial court was correct in granting summary judgment to Appellee, and the judgment of the trial court is affirmed.
 Donofrio, J., concurs. Vukovich, J., concurs. *Page 1