[Cite as *Miami Poplar Rentals, L.L.C. v. Hudoba*, 2014-Ohio-1323.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

MIAMI POPLAR RENTALS, LLC,           :
                                                              CASE NO.   CA2013-06-094
     Plaintiff-Appellant,           :
                                                              O P I N I O N
                                                        :     3/31/2014
  - vs -
                                                        :

DOUG HUDOBA, et al.,                        :

     Defendants-Appellees.         :


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2009 10 4557


Jay C. Bennett, Oxford Professional Building, 5995 Fairfield Road, Suite 5, Oxford, Ohio 45056, for plaintiff-appellant

Timothy J. Meloy, 110 North Beech Street, Oxford, Ohio 45056, for defendants-appellees


**S. POWELL, J.**

{¶ 1}   Plaintiff-appellant, Miami Poplar Rentals, LLC, appeals from the decision of the Butler County Court of Common Pleas rendering judgment in favor of defendants-appellees, Doug Hudoba, Anthony Bellato, and Robert Elgrin.  For the reasons detailed below, we affirm.

{¶ 2}   Miami Poplar is a corporation located in St. Louis, Missouri that owns and manages student rental property in Oxford, Ohio.  At all times relevant to this appeal,

appellees were students at Miami University located in Oxford, Ohio.

{¶ 3} In August 2004, appellees began occupancy of rental property owned by Miami Poplar located at 216 High Street (Property). The stated term for the lease was two semesters beginning August 2004 and ending May 2005. On September 20, 2004, appellees renewed their lease agreement for the Property for an additional two-semester term beginning August 2005 and ending May 2006.

{¶ 4} In December 2004, appellees travelled out of town for winter break, leaving the Property unoccupied. When they returned to the Property, appellees discovered the pipes had burst, resulting in various damages to the Property. Miami Poplar alleged the pipes burst because appellees failed to adequately heat the Property during the winter break. Appellees denied the allegations and the present dispute ensued.

{¶ 5} On March 29, 2005, Miami Poplar sent a letter to appellees stating that repair estimates and invoices had been received for the damages to the Property. The estimated cost of repair was $6,240. Miami Poplar demanded that appellees make payment arrangements within ten days. Miami Poplar further informed appellees that failure to cooperate "may impact the occupancy of these premises by certain individuals in the 2005-2006 school year at Miami University."

{¶ 6} On May 4, 2005, Miami Poplar sent a follow-up letter to appellees regarding the damages to the Property and the estimated cost of repairs. In this letter, Miami Poplar demanded payment of the repair estimates, reserved the right to take legal action, and again warned "[s]uch action may impact your future arrangements."

{¶ 7} In addition to these letters, it is undisputed that Miami Poplar and appellees were also in contact via telephone and email correspondence. Based on all the communications with Miami Poplar, appellees believed their lease for the 2005-2006 school year had been rescinded, thus causing them to hurriedly make other living arrangements for

- 2 -

the upcoming school year.

{¶ 8} On May 6, 2005, appellees' counsel sent a letter to Miami Poplar denying liability for the damages that occurred on the Property. In this letter, appellees also informed Miami Poplar they would not be occupying the Property for the 2005-2006 school year. Miami Poplar then re-listed the Property to solicit potential occupants. However, Miami Poplar's attempts were unsuccessful and the Property remained vacant for the 2005-2006 school year. As a result, Miami Poplar alleges it suffered damages of $25,600 for loss of rent.

{¶ 9} On October 16, 2009, Miami Poplar instituted these proceedings to recover for the cost of repair to the Property and breach of contract as a result of appellees' failure to occupy the Property for the 2005-2006 school year. On February 14, 2013, Miami Poplar filed a motion for partial summary judgment on its breach of contract claim, which the trial court denied. The matter was then tried to the bench. Following trial, the trial court issued a written decision rendering judgment in favor of appellees on all claims.

{¶ 10} Miami Poplar now appeals, raising the following assignment of error for review:

{¶ 11} THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

{¶ 12} In its sole assignment of error, Miami Poplar argues the trial court erred when it denied summary judgment on its breach of contract claim. However, it is well-established "the denial of a motion for summary judgment is not a point of consideration in an appeal from a final judgment entered following a trial on the merits." *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 156 (1994). As such, "[a]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there existed genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Schroeder*

*v. Watson*, 10th Dist. Franklin No. 13AP-537, 2014-Ohio-711, ¶ 18, quoting *Whittington* at syllabus. Accordingly, Miami Poplar may not appeal from the trial court's denial of summary judgment because the later verdict demonstrates that there remained genuine issues of material fact on the issues raised in the motion for summary judgment. Nevertheless, in the interest of justice, we will review the decision of the trial court to determine if its decision was proper and supported by the manifest weight of the evidence.

{¶ 13} As an appellate court, our review of a trial court's decision is limited to whether the judgment is against the manifest weight of the evidence. *Jones v. Holmes*, 12th Dist. Butler No. CA2012-07-133, 2013-Ohio-448, ¶ 24. The Ohio Supreme Court has confirmed that when reviewing the manifest weight of the evidence, an appellate court conducts the same analysis in both criminal and civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. As such, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Id.* at ¶ 20 quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 14} If the evidence presented to the trial court is susceptible to more than one interpretation, we are bound to give it the construction that is consistent with the trial court's judgment and finding of facts. *Holmes* at ¶ 24. A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and the evidence submitted before the trial court. *Artisan & Truckers Cas. Co. v. JMK Transp., L.L.C.*, 12th Dist. Clermont No. CA2013-01-004, 2013-Ohio-3577, ¶ 25. The underlying rationale of this deferential standard rests with the understanding that "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

*Mike Castrucci Ford Sales, Inc. v. Hoover*, 12th Dist. Clermont No. CA2007-02-022, 2008-Ohio-1358, at ¶ 19, quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 15} After hearing the evidence presented at trial, the trial court issued a written decision detailing its findings and conclusions of law. Pertinent to Miami Poplar's breach of contract claim, the trial court concluded:

> The Plaintiff sued for its inability to rent the house for the following 2005-2006 academic year in the amount of $25,600. The Court finds that communication from the Plaintiff to the Defendants that if they did not pay her $6,240 within ten days it would effect [sic] their lease occupancy of the property for the 2005-2006 academic year. Several communications were sent from the Plaintiff to the Defendants indicating that the Defendants would not be welcomed back. The Court hereby finds that this communication acted to rescind the August 2005 through May 2006 Lease Agreement. Defendants are not responsible for the $25,600 for failure of the Plaintiff to lease the rental property for the 2005-2006 academic year.

Although not explicitly referenced by the trial court in its entry, we find the trial court's conclusion to be consistent with a finding that Miami Poplar anticipatorily repudiated the 2005-2006 lease agreement through its communications with appellees.

{¶ 16} "[W]hen a contracting party repudiates the contract prior to the time that such party's performance is due, an 'anticipatory breach' or, more precisely, an 'anticipatory repudiation' occurs." *Northway McGuffey Coll. v. Brienza*, 7th Dist. Mahoning No. 07MA145, 2008-Ohio-6207, ¶ 34, quoting *Farmers Comm. Co. v. Burks*, 130 Ohio App.3d 158, 172 (3d Dist.1998). A nonbreaching party may rely on an anticipatory repudiation as a defense against a subsequent breach of contract claim. *Id*; *Farmer's Market Drive-In Shopping Ctrs., Inc. v. Magana*, 10th Dist. No. 06AP-532, 2007-Ohio-2653, ¶ 39.

{¶ 17} In order to establish the existence of an anticipatory repudiation "[t]he repudiation must be expressed in 'clear and unequivocal' terms." *Cambridge Co., Ltd. v.*

*Telsat, Inc.*, 9th Dist. Summit No. 23935, 2008-Ohio-1056, ¶ 8, quoting *McDonald v. Datsun*, 59 Ohio App.3d 38, 40 (8th Dist.1989). Anticipatory repudiation of a contract has been found where there is an overt action indicating that performance will not be tendered; mere indirect inferences are not sufficient to support a claim of anticipatory repudiation. *Id.* Ultimately, "[w]hether a party has repudiated a contract or merely expressed doubt as to willingness to perform is a question of fact." *Schafer v. Soderberg & Schafer*, 6th Dist. Ottawa No. OT-10-009, 2011-Ohio-4687, ¶ 88.

{¶ 18} Based on our review of the record, we find there is competent, credible evidence to support the trial court's factual findings and its decision was not against the manifest weight of the evidence. In support of their position, appellees introduced the written communications sent by Miami Poplar during the relevant dispute; i.e., a letter dated March 29, 2005 from Miami Poplar to appellees, which requested payment for the water damages in the house and warned that failure to make arrangements to pay for the repairs "may impact the occupancy of [the] premises by certain individuals in the 2005-2006 school year at Miami University," as well as a letter dated May 4, 2005, which reiterated the amount of damages to repair the premises and warned of a potential "impact [on] your future living arrangements."

{¶ 19} In addition to the written communications, the trial court heard pertinent testimony relating to appellees' phone conversations with Miami Poplar during the course of the dispute. Appellees testified that based on their communications with Miami Poplar, it was clear they were not welcome back for the next year unless payment was made for the damage to the Property. Specifically, Hudoba testified that he had a telephone communication with Adell Dake, a member of Miami Poplar who was listed as an emergency contact on appellees' lease agreement. According to Hudoba's testimony, Dake explicitly told him on the phone "[i]f you kids do not pay these damages, you're not welcome back here next year." Following the conversation with Dake, Hudoba stated that he believed Miami

Poplar had rescinded the 2005-2006 lease agreement. Because of this, appellees were forced to find other last minute housing arrangements for the upcoming year.

{¶ 20} The only evidence presented by Miami Poplar on this issue was the testimony of Dake who denied that any communication was intended to rescind the written lease agreement. Dake testified that she believed the statements contained in the letters only meant that Miami Poplar would have to increase the security deposit for the next year if the damages were not paid. However, Dake also acknowledged the letters made no specific reference to the security deposit. In addition, Dake testified that she did not recall having a conversation with Hudoba, in which she stated that appellees were not welcome back to the Property unless the property damage claim was paid.

{¶ 21} In light of the evidence presented, we find the trial court did not clearly lose its way in rendering judgment in favor of appellees. This case came down to the credibility of the witnesses. In addition to the written communications, appellees introduced the testimony of Hudoba who testified that Dake made unequivocal statements on the phone that appellees would not be permitted to return to the Property for the upcoming school year unless the property damages were paid. Those communications were sufficient to support a finding that Miami Poplar repudiated the 2005-2006 lease agreement. Although there is conflicting testimony, the trial court, as trier of fact, was in the best position to weigh the credibility of the witnesses. The trial court clearly found appellees' testimony to be more credible. Therefore, the trial court's finding in favor of appellees is supported by the weight of the evidence. Accordingly, Miami Poplar's single assignment of error is overruled.

{¶ 22} Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.