[Cite as *Weckel v. Cole + Russell Architects, Inc.*, 2024-Ohio-5111.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| FREDERIC C. WECKEL, | : | APPEAL NOS. C-210425 |
| | | C-230535 |
| Plaintiff-Appellee/Cross-Appellant, | : | C-230543 |
| | | TRIAL NO. A-1805234 |
| | : | |
| vs. | | |
| | : | |
| COLE + RUSSELL ARCHITECTS, INC., | : | *O P I N I O N.* |
| | : | |
| Defendant-Appellant/Cross-Appellee. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded; Appeal Dismissed in Part in C-230535 and C-230543

Date of Judgment Entry on Appeal: October 25, 2024

*Tobias, Torchia & Simon* and *David Torchia*, for Plaintiff-Appellee/Cross-Appellant,

*Keating Meuthing & Klekamp PPL* and *Kasey L. Bond*, for Defendant-Appellant/Cross-Appellee.

**Bock, Presiding Judge.**

**{¶1}** Defendant-appellant/cross-appellee Cole + Russell Architects, Inc. ("C+R") fired its employee, plaintiff-appellee/cross-appellant Frederic C. Weckel, more than 20 years ago. After nearly 14 years of litigation, the failure of his claims for wrongful termination, and unsuccessful attempts to enforce various settlement agreements, Weckel sued C+R again in 2018, asserting a claim for breach of a shareholder agreement. This time, Weckel prevailed. The trial court awarded him more than a million dollars in damages.

**{¶2}** C+R appeals the trial court's judgment, assigning as error the court's granting of Weckel's summary-judgment motion, denying C+R's summary-judgment and Civ.R. 60(B) motions, and incorrectly calculating prejudgment interest. Weckel also appeals, asserting that the trial court failed to award him contractual interest, to properly calculate statutory prejudgment interest, and to award attorney fees.

**{¶3}** We overrule C+R's first and second assignments of error and hold that the trial court properly granted summary judgment to Weckel. The record did not establish that Weckel's claims were barred by res judicata or that Weckel repudiated the Shareholder Agreement when he rejected C+R's attempted tender of payments.

**{¶4}** We decline to review the merits of C+R's third assignment of error. The trial court lacked jurisdiction to rule on C+R's Civ.R. 60(B) motion because doing so was outside the scope of our 2021 limited remand.

**{¶5}** Next, we hold that the trial court properly determined that prejudgment interest began to accrue in 2018. But the trial court set an improper interest rate because the Shareholder Agreement provided that the interest rate would be set on the date that C+R first became obligated to make payments to Weckel. We therefore

sustain in part and reverse in part C+R's fourth assignment of error, and sustain Weckel's second and third assignments of error. We remand the cause for the trial court to determine, consistent with this opinion, the correct interest rate.

{¶6} As with C+R's third assignment of error, we decline to review Weckel's first assignment of error. The trial court lacked jurisdiction to consider Weckel's Civ.R. 60(B) motion, which asked the trial court to award Weckel contractual interest. Weckel filed his motion while C+R's notice of appeal was pending and it was outside the scope of our limited remand.

{¶7} Finally, we overrule Weckel's fourth assignment of error. The trial court did not abuse its discretion in denying Weckel's motion for attorney fees.

### I. Facts and Procedure

#### A. Facts

{¶8} This is the fourth appeal between these parties. *See Weckel v. Cole + Russell Architects*, 2013-Ohio-2718, (1st Dist.) ("*Weckel I*"); *Weckel v. Cole + Russell Architects*, 2017-Ohio-7491 (1st Dist.) ("*Weckel II*"); *Weckel v. Cole + Russell Architects*, 2019-Ohio-3069 (1st Dist.) ("*Weckel III*").

#### 1. The Shareholder Agreement and the ESOP

{¶9} C+R, an architectural firm based in Cincinnati, hired Weckel in 1994. Weckel served in many roles at C+R and sat on C+R's board of directors. In 1995, Weckel paid $153,000 for 115 shares of C+R's stock under a Shareholder Agreement. When Weckel's employment ended, he had accumulated 1,104 shares of C+R stock.

{¶10} The Shareholder Agreement provided that after Weckel's employment ended, Weckel would sell his shares back to C+R. The value of the shares would be

3

determined based on a "valuation date," which varied depending on why C+R ended Weckel's employment.

{¶11} In 2001, C+R formed an Employee Stock Ownership Plan ("ESOP"). Upon his retirement, Tom Cole, a founder of C+R, sold his shares to the ESOP instead of redeeming them under the Shareholder Agreement. Weckel stated in his affidavit that it was anticipated that he and John Russell, the other founder of C+R, would also be able to sell their shares to the ESOP rather than redeem them through the Shareholder Agreement.

### 2. Weckel's termination, the 2004 Agreement, and Weckel's alleged repudiation of the Shareholder Agreement

{¶12} In 2004, C+R ended Weckel's employment. David Arends, C+R's CEO, asserted, "although [C+R] believed it had a legitimate business justification for terminating [Weckel's] employment, [C+R] chose to not exercise its right to terminate [Weckel] for cause . . . Instead, the Company allowed [Weckel] the opportunity to resign and gave him numerous benefits to which he was not otherwise entitled."

{¶13} In May 2004, the parties mediated and reached a settlement ("the 2004 Agreement") under which Weckel would resign and sell his shares to the ESOP rather than selling the shares under the Shareholder Agreement. The settlement terms were memorialized in an "Outline of Settlement Terms." The Outline of Settlement Terms stated that Weckel would resign and the ESOP would purchase Weckel's shares "in the same manner" as Cole's shares. When Weckel received the finalized 2004 Agreement from C+R in June 2004, he claimed C+R had added terms not previously discussed, including a requirement that he personally guarantee the loan to the ESOP used to purchase his shares. Weckel objected and C+R suggested that he negotiate with the

4

bank. In mid-August 2004, C+R imposed a September deadline for Weckel to conclude his negotiations with the bank and sign the 2004 Agreement.

{¶14} Weckel did not sign the 2004 Agreement and on September 4, 2004, C+R sent Weckel a letter stating that it considered Weckel in breach of the 2004 Agreement. As such, C+R stated that it would purchase Weckel's shares under the Shareholder Agreement and enclosed the first of ten annual payments for a total value of $677,480.64. Weckel rejected the payment and his attorney returned the check with a letter stating, "The payment is inconsistent with the settlement."

{¶15} In April 2005, C+R communicated with Weckel about sending an additional check and Weckel's attorney responded, "There is no need to tender the check, since it will be returned for the reasons stated in my letter." C+R did not attempt to tender any other checks to Weckel under the Shareholder Agreement after this. At this point, C+R considered Weckel's shares "retired."

### 3. The 2004 lawsuit

{¶16} In late September 2004, Weckel sued C+R to enforce the 2004 Agreement. The complaint's allegations related to the facts of Weckel's termination, the agreement to repurchase his shares through the ESOP, and the failure of the 2004 Agreement.

{¶17} In November 2005, Weckel amended his complaint. He abandoned his attempt to enforce the 2004 Agreement and asserted claims for wrongful termination. The amended complaint alleged breach of fiduciary duty to minority shareholders and alleged that Weckel had been fired in retaliation for Weckel's hiring counsel to advise him on a dispute between Weckel and C+R. *See Weckel I*, 2013-Ohio-2718 (1st Dist.).

5

### 4.    The 2008 Agreement

**{¶18}**  The 2004 lawsuit progressed until the parties reached a settlement in 2008 ("2008 Agreement"). Under the 2008 Agreement, Weckel would sell his shares to the ESOP. The 2008 Agreement provided that Weckel's sale of his shares to the ESOP was contingent on the approval of an independent advisor, Thomas Potts. Ultimately, Potts did not approve the settlement because he determined that the ESOP's purchase of Weckel's shares would create licensing issues in some states in which C+R did business. C+R declared the 2008 Agreement void. Weckel moved to enforce the 2008 Agreement and moved to reopen discovery to explore the basis of Potts's opinion. The trial court denied his motion to reopen discovery.

### 5.    Weckel loses at trial

**{¶19}**  In April 2011, Weckel's wrongful termination claims proceeded to a jury trial, which resulted in a verdict for C+R on all counts. *Weckel I* at ¶ 4. The jury determined Weckel failed to prove that C+R fired him for consulting with an attorney or for raising concerns about an issue he believed constituted fraud. Further, the jury determined that C+R had "no legitimate overriding business justification" for terminating his employment. *Id.* at ¶ 45-46.

### 6.    Weckel attempts to invoke the Shareholder Agreement

**{¶20}**  After the trial court denied his motion for a new trial, Weckel made his first trip to this court, appealing both the trial court's judgment against him and its denial of his motion to reopen discovery into the basis of Potts's opinion.

**{¶21}**  In October 2011, while *Weckel I* was still pending, Weckel sent C+R a letter seeking, for the first time, to redeem his stock under the terms of the Shareholder Agreement ("2011 Demand"). The 2011 Demand requested payment of a lump-sum

6

amount and offered two dates and values for the shares, depending on whether the court determined that C+R fired him with or without cause. The 2011 Demand did not suggest how Weckel came to the valuations listed in his letter.

{¶22} C+R responded to the 2011 Demand, stating that because of Weckel's "breach[ing] and repudiat[ing] the Shareholder Agreement" over the last seven and a half years, C+R had no obligations under the Shareholder Agreement.

{¶23} In 2013, this court held that the trial court abused its discretion in denying Weckel discovery into the basis of Potts's opinion and remanded to allow further discovery. *Weckel I*, 2013-Ohio-2718, at ¶ 30, 35, 40 (1st Dist.). We affirmed the judgment in C+R's favor on the wrongful-termination issue.

### 7. Weckel's first case finally ends

{¶24} On remand, Weckel renewed his motion to enforce the 2008 Agreement. The trial court again denied the motion. We affirmed the trial court's judgment in *Weckel II*, 2017-Ohio-7491, at ¶ 35 (1st Dist.).[1] The Supreme Court of Ohio declined jurisdiction over the cause in March 2018. *Weckel v. Cole & Russell Architects*, 2018-Ohio-923.

### B. Procedural history

{¶25} In September 2018, Weckel initiated the action at issue in this appeal, which seeks a declaratory judgment to determine whether he could redeem his shares under the Shareholder Agreement. Alternatively, he sought to recover under a theory of unjust enrichment. He later amended the complaint to include a breach-of-contract claim.

---

[1] The trial court later denied C+R's motion for attorney fees, which this court affirmed in *Weckel III*.

{¶26} C+R moved for summary judgment, arguing that the suit was barred by res judicata. The trial court denied the motion, reasoning that Weckel's claims were not "ripe until enforcement of the past settlement agreements was foreclosed." Following discovery, C+R renewed its motion for summary judgment, arguing that Weckel's claims were barred by res judicata or alternatively, that Weckel had repudiated the Shareholder Agreement when he rejected C+R's attempted payments in September 2004. Weckel filed a cross-motion for summary judgment, arguing that he was entitled to judgment on all his claims. Weckel attached the 2011 Demand Letter to his motion for summary judgment.

{¶27} The trial court granted Weckel's motion and denied C+R's motion in July 2021. The trial court determined that Weckel's claims were not ripe until March 2018, the conclusion of Weckel's attempt to enforce the 2008 Agreement. It also found that Weckel had not repudiated the Shareholder Agreement. The trial court entered judgment on Weckel's breach of contract claim and awarded him $1,069,756.

{¶28} Weckel moved for prejudgment interest and attorney fees. After C+R filed a notice of appeal, this court remanded the cause for the trial court to resolve the pending prejudgment-interest and attorney-fees motions. In August 2022, C+R filed a Civ.R. 60(B) motion for relief from judgment arguing that a question of fact remained regarding the valuation of Weckel's shares and requesting a damages hearing. Weckel also filed a Civ.R. 60(B) motion arguing that, in addition to prejudgment interest, he was entitled to contractual interest under the Shareholder Agreement.

{¶29} The trial court granted Weckel's motion for prejudgment interest and awarded interest running from March 15, 2018—the day after the Supreme Court of

Ohio declined jurisdiction from *Weckel II*—at a rate of 2.51 percent, for a total of $89,086.81. The trial court denied Weckel's motion for attorney fees and did not award the contractual interest he sought. Finally, the trial court denied C+R's motion for relief from judgment, concluding that the jury in the wrongful-termination case had determined that Weckel was terminated with cause as provided in the Shareholder Agreement and there was no question of fact regarding the value of Weckel's shares.

{¶30} C+R filed a second notice of appeal specific to the trial court's prejudgment interest award and its denial of C+R's Civ.R. 60(B) motion. Weckel cross-appealed. We consolidated the three appeals.

## II. Law and Analysis

### A. C+R'S APPEAL

{¶31} C+R asserts that the trial court erred by (1) denying its motion for summary judgment (2) granting Weckel's motion for summary judgment, (3) denying C+R's motion for relief from judgment, and (4) improperly calculating Weckel's prejudgment-interest award.

### 1. The trial court properly denied C+R's summary-judgment motion

{¶32} C+R's first assignment of error argues that the trial court improperly denied its summary-judgment motion. C+R argued below that Weckel's claims were barred by res judicata and, even if they were not, Weckel had repudiated the Shareholder Agreement and therefore could not enforce it.

### a. Standard of review

{¶33} This court reviews a trial court's summary-judgment ruling de novo. *Environmental Solutions & Innovations, Inc. v. Edge Eng. & Science, LLC*, 2023-Ohio-2605, ¶ 6 (1st Dist.). A court must grant summary judgment where (1) there are

9

no genuine issues of material fact, (2) the movant is entitled to judgment as a matter of law, and (3) when viewing the evidence most strongly in the nonmovant's favor, reasonable minds can come to one conclusion, and that conclusion is adverse to the nonmovant. Civ.R. 56(C); *see M.H. v. City of Cuyahoga Falls*, 2012-Ohio-5336, ¶ 12.

{¶34} The movant has the initial burden on summary judgment of informing the court of the basis of the motion and must point to evidence in the "record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the movant satisfies this initial burden, the burden shifts to the nonmovant "to set forth specific facts showing that there is a genuine issue for trial." *Id.*; *see* Civ.R. 56(E). If the nonmovant fails to carry this burden, summary judgment should be granted. *Environmental Solutions & Innovations, Inc.* at ¶ 7.

{¶35} A court may not weigh the evidence or choose between reasonable inferences on summary judgment as the "purpose of summary judgment 'is not to try issues of fact, but rather to determine whether triable issues of fact exist.'" *Id.*, quoting *Walker v. Hodge*, 2008-Ohio-6828, ¶ 19 (1st Dist.).

### b. Res judicata does not bar Weckel's 2018 action

{¶36} C+R asserts that Weckel's 2018 action to enforce the Shareholder Agreement is barred by res judicata because Weckel could have asserted a claim for breach of the Shareholder Agreement in his 2004 action. Weckel argues that (1) he could not have asserted a claim for breach because the claim was not ripe until all his appeals in the prior case were completed, and (2) his breach-of-contract claim did not arise from the same transaction or occurrence as his wrongful-termination claim.

**{¶37}** The applicability of res judicata is a question of law that the court reviews de novo. *Daniel v. Williams*, 2014-Ohio-273, ¶ 18 (10th Dist.). Res judicata is an affirmative defense and the party asserting it bears the burden of proving its applicability to the case. *Miller v. Lagos*, 2008-Ohio-5863, ¶ 15 (11th Dist.).

**{¶38}** The doctrine of res judicata includes "the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 2007-Ohio-1102, ¶ 6. C+R's arguments relate to claim preclusion.

**{¶39}** Claim preclusion provides that a valid, final judgment on the merits bars any future action based on any claim arising out of the same transaction or occurrence as the first action. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995). Claim preclusion applies to "all claims which were *or might have been* litigated in a first lawsuit." (Emphasis in original.) *Id.* Accordingly, a party must raise every ground for relief available at the time of the first action that arises out of the same transaction or occurrence "or be forever barred from asserting it." *First Fin. Bank, N.A. v. Cooper*, 2016-Ohio-3523, ¶ 11 (1st Dist.), quoting *State ex rel. Robinson v. Huron Cty. Court of Common Pleas*, 2015-Ohio-1553, ¶ 8.

**{¶40}** To show that res judicata bars Weckel's claims, C+R must establish:

(1) a prior final, valid decision on the merits by a court of competent jurisdiction;

(2) and a second action;

(3) involving the same parties, or their privities, as the first action;

(4) raising claims that were or could have been litigated in the first action; and

11

(5) arising out of the transaction or occurrence that was the subject

matter of the previous action.

*Portage Cty. Bd. of Commrs. v. City of Akron*, 2006-Ohio-954, ¶ 84, quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

**{¶41}** The parties dispute the last two elements. Because we hold that C+R failed to establish that Weckel could have brought his 2018 claims in the 2004 action, we do not reach whether the claims arise from the same transaction or occurrence.

### i. Res judicata does not apply to claims that are not ripe

**{¶42}** Justiciability is a "threshold consideration[] in every case, without exception." *Barrow v. New Miami*, 2016-Ohio-340, ¶ 12 (12th Dist.). A case is justiciable only when it involves "a real controversy presenting *issues which are ripe for judicial resolution*." (Emphasis added.) *Stewart v. Stewart*, 134 Ohio App.3d 556, 558 (4th Dist. 1999); *Keller v. City of Columbus*, 2003-Ohio-5599, ¶ 26; *see also Saqr v. Naji*, 2017-Ohio-8142, ¶ 20 (1st Dist.).

**{¶43}** A court's ripeness inquiry must include both constitutional and prudential justiciability considerations. *State v. Mims*, 2023-Ohio-1044, ¶ 14 (8th Dist.). Though ripeness is different than standing, both require a certain impending injury. *State v. Maddox*, 2022-Ohio-764, ¶ 8. An injury that is sufficiently imminent satisfies the constitutional requirement under the ripeness doctrine. *Id.* "The prudential-justiciability concerns include (1) whether the claim is fit for judicial decision and (2) whether withholding court consideration will cause hardship to the parties." *Id.*

**{¶44}** Because a court may not adjudicate claims that are not ripe, res judicata does not apply to claims that were not ripe or had not accrued at the time of the first

12

action. *See State ex rel. Jones v. Husted*, 2016-Ohio-5752, ¶ 22; *see also Ardary v. Stepien*, 2004-Ohio-630, ¶ 25 (8th Dist.).

{**¶45**} Claim preclusion does not bar claims that arose after the complaint in the first action was filed and a plaintiff need not amend the complaint to add newly-arisen claims. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006) ("[W]e follow the majority rule articulated by the Wright and Miller treatise 'that an action need include only the portions of the claim due at the time of commencing that action,' because 'the opportunity to file a supplemental complaint is not an obligation.'"); *see also U.S. Bank Natl. Assn. v. Gullotta*, 2008-Ohio-6268, ¶ 30 ("[A] recovery for the monthly installments due at the time the action is commenced will not bar recovery for installments that subsequently come due.").

{**¶46**} Claim preclusion does not bar claims that potentially could have been brought in a declaratory-judgment action before the claim had accrued. *See State ex rel. Shemo v. City of Mayfield Hts.*, 95 Ohio St.3d 59, 69 (2002) ("[A] declaratory judgment is not res judicata on an issue or claim not determined thereby even though it was known and existing at the time of the original action."); *Jamestown Village Condominium Owners Assn. v. Mkt. Media Research*, 96 Ohio App.3d 678, 685 (8th Dist. 1994); *see also* 1 Restatement of the Law 2d, Judgments, § 33, Comment c (1982) ("A refusal to apply merger or bar can be defended in cases where declaratory relief is sought before accrual of a claim for ordinary relief."); R.C. 2721.09 ("[W]henever necessary or proper, a court of record may grant further relief based on a declaratory judgment or decree previously granted under this chapter.").

### ii. Weckel's breach-of-contract claim was not ripe when he amended his complaint

{¶47} Weckel amended his complaint in November 2005. Thus, this court must determine if his claim for breach of the Shareholder Agreement had accrued by November 2005. *See Yakov RE, LLC v. Rhodes*, 2014-Ohio-2025, ¶ 6 (1st Dist.) ("It is well settled that an amended pleading supersedes the original pleading."). Unless Weckel's breach-of-contract claim had accrued before the day that he amended his complaint in the first action, res judicata does not apply.

{¶48} A claim for breach of contract requires (1) a valid contract, (2) performance by one party, (3) breach by the other, and (4) damages resulting from the breach. *Manter v. CPF Senior Living — Northgate Park, LLC*, 2024-Ohio-1385, ¶ 36 (1st Dist.). A breach-of-contract claim does not accrue until all the elements of the claim have been met. *Kincaid v. Erie Ins. Co.*, 2010-Ohio-6036, ¶ 13 ("Until Erie refuses to pay a claim for a loss, Kincaid has suffered no actual damages for breach of contract, the parties do not have adverse legal interests, and there is no justiciable controversy.").

{¶49} Weckel asserts that no breach occurred until 2011 as C+R had not, until then, given any indication that it would not perform under the Shareholder Agreement. We agree that, on this record, C+R's breach of contract occurred in 2011, but not because C+R provided notice that it intended to breach.

{¶50} Until 2011, C+R had attempted to perform under the contract by tendering payments to Weckel, which Weckel rejected. As explained below, this was a prevention of C+R's performance, rather than an anticipatory repudiation, and C+R's obligations under the Shareholder Agreement remained in effect. But in 2011, Weckel expressly demanded that C+R perform under the Shareholder Agreement and C+R

14

refused to perform. C+R's performance under the Shareholder Agreement was due and C+R failed to perform. C+R was in breach of the contract at this time. *See* 1 Restatement of the Law 2d, Contracts, § 235 (1979) ("When performance of a duty under a contract is due any non-performance is a breach.").

{¶51} C+R offered various theories about when its obligations under the contract were due. In its reply in support of its motion for summary judgment below, C+R asserted that Weckel's breach-of-contract claim was ripe once C+R "did not make a payment to him in April 2006." Thus, even if the breach occurred on the date that C+R argued below, Weckel's breach-of-contract claim was not ripe until after Weckel amended his 2004 complaint and res judicata does not apply. Until C+R breached the Shareholder Agreement, Weckel's breach-of-contract claim did not accrue and res judicata does not bar his breach-of-contract claim.

{¶52} The trial court erred in determining that Weckel's claims were not ripe until "enforcement of the past settlement agreement was foreclosed." But "a reviewing court should not reverse a correct judgment merely because it is based on erroneous reasons." *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 2013-Ohio-3019, ¶ 51. While we hold that the trial court erred by selecting 2018 as the date that Weckel's claims ripened, we agree that Weckel's claims were not ripe when he filed his November 2005 amended complaint. Res judicata does not bar Weckel's breach-of-contract claim.

#### c. The record does not establish anticipatory repudiation

{¶53} C+R argues that even if res judicata does not apply, it was entitled to summary judgment because Weckel repudiated the Shareholder Agreement when he refused C+R's payments in 2004 and 2005.

{¶54} Parties may defend a breach-of-contract claim based on anticipatory repudiation. *Miami Poplar Rentals, LLC v. Hudoba*, 2014-Ohio-1323, ¶ 16 (12th Dist.). To establish an anticipatory repudiation, a party must show that the alleged repudiator refused, in advance, to perform a duty not yet due under a contract resulting in damages to the nonrepudiating party. *Haman Ents. v. Sharper Impressions Painting Co.*, 2015-Ohio-4967, ¶ 23 (10th Dist.). An anticipatory repudiation must be clear and unequivocal. *Id.* Whether a party's conduct is a repudiation or merely an expression of doubt as to the party's willingness to perform is generally a question of fact. *Farmers Comm. Co. v. Burks*, 130 Ohio App.3d 158, 172 (3d Dist. 1998).

{¶55} A party injured by the repudiation of a continuing contract may: (1) treat the contract as rescinded and recover on a quantum meruit so far as he has performed, or (2) keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform at the end of the time specified in the contract, and sue and recover under the contract, or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance and sue to recover as far as he has performed and for the profits he would have realized if he had not been prevented from performing.

*Cleveland Co. v. Std. Amusement Co.*, 103 Ohio St. 382, 387-388 (1921); *see David Rentals, LLC v. Virginia Woods, LLC*, 2024-Ohio-1446, ¶ 23 (1st Dist.).

{¶56} We hold that C+R was not entitled to summary judgment on the grounds that Weckel had repudiated the Shareholder Agreement because the record does not establish that Weckel made a clear and unequivocal statement that he was

repudiating the contract. Weckel returned one tendered check and when C+R sought to tender a second payment, Weckel told C+R that he would return any other checks because the payment was inconsistent with the 2004 Agreement. And at that time, Weckel was still attempting to enforce the 2004 Agreement. Weckel's rejection of payments in 2004 and 2005 under a belief that payments were contrary to a settlement agreement did not rise to a clear repudiation of the Shareholder Agreement.

{¶57} C+R cites *Plikerd v. Mongeluzzo*, 73 Ohio App.3d 115 (3d Dist. 1992) to argue that "a party repudiates a contract by refusing payments under that contract." In *Plikerd*, the Third District held that the plaintiffs had repudiated an option contract in which the plaintiffs gave the defendants an option to purchase the plaintiffs' land. *Id.* at 131. The plaintiffs asserted that they were rescinding the contract and rejected the defendants' attempts to tender payment to extend the option. *Id.* Later, the plaintiffs sued the defendants and sought to recover the option payments that they had previously rejected. *Id.* The court stated that by rejecting the tendered funds to extend the option, the defendants' "purpose in taking the option was frustrated" and the plaintiffs had "breached the agreement to sell for the option price and . . . have not earned the consideration promised by the [defendants] in return." *Id.*

{¶58} *Plikerd* is inapplicable to this case. *Plikerd* does not involve a creditor-debtor relationship or a relationship in which one party owed payments to another. Further, the *Plikerd* plaintiffs did more than simply refuse money they were owed; rather, they refused to perform a contractual duty to honor an option to purchase.

{¶59} Ultimately, C+R argues that Weckel prevented its performance under the contract. Like anticipatory repudiation, prevention of performance is a defense to

a breach-of-contract claim. *Meyer Tool, Inc. v. Mikrolar, Inc.*, 2023-Ohio-704, ¶ 15 (1st Dist.). A plaintiff cannot rely on a defendant's failure of performance in asserting a breach-of-contract claim where the plaintiff prevented the defendant's performance. *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 54.

{¶60} Weckel's rejection of the 2004 tender and his open-ended 2005 rejection constitute a prevention of performance, but only as it relates to any installments that were due at those times. Weckel's prevention of performance protects C+R from a claim of breach on the payments it attempted to tender—and relieves C+R of any obligation to pay interest on those amounts—but Weckel's rejection does not discharge the underlying debt. *See Kennedy v. Boles Invest., Inc.*, 2011 U.S. Dist. LEXIS 65327, \*21-22, 30 (S.D. Ala. June 7, 2011) ("Case authorities and treatises are legion for the proposition that a debtor whose tender is refused is not thereby relieved from liability for the principal amount of the debt."); R.C. 1303.68(c).

{¶61} Because the record establishes that Weckel rejected the payments in the context of an ongoing settlement dispute, and because the rejection of tendered payments alone does not discharge an underlying debt, C+R failed to demonstrate an unequivocal repudiation by Weckel.

{¶62} We overrule C+R's first assignment of error.

## 2. C+R failed to show that the trial court erroneously granted summary judgment in Weckel's favor

{¶63} In its second assignment of error, C+R argues that the trial court erred by granting summary judgment in Weckel's favor on his breach-of-contract claim. C+R offers no independent argument related to this assignment of error. Instead, its entire argument on its second assignment of error states, "The trial [c]ourt's entry dated July 9, 2021 denied CR Architects' Motion for Summary Judgement while

18

granting Weckel's Motion for Summary Judgment. As shown above, the trial court erred in denying CR Architects' motion. For those same reasons, as well as the reasons outlined below, the trial court erred in granting Weckel's Motion for Summary Judgment." In other words, C+R argues that res judicata and repudiation prevented Weckel from raising his claims.[2]

**{¶64}** As discussed above, Weckel's 2018 claim was not ripe when he amended his complaint in November 2005, precluding the application of res judicata. And the record does not show that Weckel repudiated the contract. We overrule C+R's second assignment of error.

### 3. The trial court lacked jurisdiction to consider C+R's motion for relief from judgment

**{¶65}** In its third assignment of error, C+R argues that the trial court erred in denying its motion for relief from judgment. That motion argued that questions of fact remained involving the valuation of Weckel's shares. But the trial court lacked jurisdiction to consider C+R's August 2022 motion for relief from judgment.

**{¶66}** The trial court granted Weckel summary judgment in July 2021. Weckel then moved for attorney fees and prejudgment interest. Following those motions, C+R filed its notice of appeal. This court remanded the case to the trial court and stayed the appeal "until the trial court decides the motions for attorney fees and prejudgment interest." Following the remand, C+R filed its Civ.R. 60(B) motion in August 2022.

**{¶67}** A notice of appeal divests a lower court of jurisdiction to consider a Civ.R. 60(B) motion. *Smith v. Soci Petro., Inc.*, 2023-Ohio-907, ¶ 8 (1st Dist.). The

---

[2] C+R arguably incorporates its arguments related to the trial court denying its Civ.R. 60(B) motion and the prejudgment-interest award. But as discussed below, we decline to review arguments related to the motion for relief from judgment. And the trial court's summary judgment did not involve prejudgment interest.

19

lower court regains jurisdiction to consider the motion after appeals have been finalized. *Id.* at ¶ 9. After a notice of appeal is filed, an appellate court can confer jurisdiction on a lower court through a remand to consider a Civ.R. 60(B) motion. *Id.*

**{¶68}** But on a limited remand, the trial court's jurisdiction is confined to carrying out the mandate of the appellate court. *Bowens v. Bowens*, 2022-Ohio-1383, ¶ 13 (10th Dist.). The trial court "may not try any other issue other than that set forth in the mandate." *Havens v. Havens*, 2013-Ohio-3166, ¶ 15 (10th Dist.). A judgment entered by a court lacking jurisdiction is void. *Best Fin. Solutions, LLC v. Tifton Packaging, LP*, 2021-Ohio-2906, ¶ 9 (1st Dist.).

**{¶69}** Because this court's remand order was limited to Weckel's motion for attorney fees and prejudgment interest, the trial court lacked jurisdiction to consider C+R's Civ.R. 60(B) motion. The trial court's order denying the motion is void and "we cannot consider the merits of [C+R's] appeal." *Best Fin.* at ¶ 12; *see Broadmoor Ctr., LLC v. Dallin*, 2016-Ohio-8541, ¶ 34 (10th Dist.) ("Accordingly, we must dismiss the portion of the appeal related to the trial court's June 3, 2016 decision and entry for lack of a final appealable order.").

**{¶70}** We dismiss the portion of the appeal numbered C-230543 related to the trial court's denial of C+R's Civ.R. 60(B) motion and accordingly do not reach C+R's third assignment of error.

## 4. The trial court incorrectly calculated prejudgment interest

**{¶71}** In its final assignment of error, C+R argues that the trial court abused its discretion when it awarded prejudgment interest running from March 15, 2018, at a rate of 2.51 percent, on a lump-sum award. C+R argues that the trial court should have awarded prejudgment interest from July 2021, when the trial court ordered it to

pay Weckel. It further argues that the interest rate applied to the prejudgment-interest award should have been the Section-483-of-the-Internal-Revenue-Code-of-1986 rate ("IRS rate") applicable in July 2021. Finally, C+R asserts that the trial court erroneously awarded interest on the entire lump-sum amount of the award, rather than awarding interest on yearly installments.

### a. Prejudgment-interest statute and the Shareholder Agreement

**{¶72}** R.C. 1343.03(A) provides:

[W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing . . . and upon all judgments . . . of any judicial tribunal for the payment of money arising out of . . . a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

**{¶73}** A party granted judgment on an underlying contract is entitled to prejudgment interest as a matter of law. *Ronald J. Solomon, D.D.S., Inc. v. Davisson*, 2018-Ohio-2011, ¶ 7 (1st Dist.). Prejudgment interest compensates plaintiffs for the time between when the claim accrued and the judgment, "regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 110-111 (1995). While R.C. 1343.03(A) sets a default statutory interest rate, if the parties' contract provides an interest rate "in relation to the money that becomes due," the interest rate in the

contract prevails. *Eagle Realty Invests., Inc. v. Dumon*, 2022-Ohio-4106, ¶ 27 (1st Dist.).

**{¶74}** The date on which a claim accrues is a factual determination to be made by the trial court. *Id. at* ¶ 25. Appellate courts review the trial court's determination of this date for an abuse of discretion. *See Miller v. Lindsay-Green, Inc.*, 2005-Ohio-6366, ¶ 107 (10th Dist.); *Cincinnati Ins. Co. v. First Natl. Bank*, 63 Ohio St.2d 220, 226 (1980) ("Generally, an award of interest is in the sound discretion of the court."); *Miller v. Gunckle*, 2002-Ohio-4932, ¶ 32, fn. 4 (observing that the Court has "specifically and clearly declined to establish a bright-line rule regarding the accrual date of prejudgment interest but rather left such a determination to the trial courts on a case-by-case basis").

### b. The prejudgment-interest award was incorrectly calculated

**{¶75}** C+R argues that the trial court erred in awarding prejudgment interest starting in March 2018, at the IRS rate applicable on the accrual date, on a lump-sum payment when the Shareholder Agreement contemplated annual payments. Because C+R has not challenged the trial court's award of a lump-sum payment, we find that the trial court did not err when it ordered interest on the lump-sum payment.

### i. The trial court did not abuse its discretion in choosing a March 2018 interest-accrual date

**{¶76}** C+R argues that the trial court should have ordered interest to accrue starting when it ordered C+R to pay Weckel in 2021. We disagree.

**{¶77}** Under R.C. 1343.03(A), prejudgment-interest awards compensate plaintiffs bringing breach-of-contract claims "for the time between the accrual of the claim and the judgment." *Hallman v. Zipperer-Davis*, 2015-Ohio-2345, ¶ 8 (1st Dist.).

22

{¶78}  In *Eagle Realty*, the plaintiffs sent a demand letter to the defendants in May 2018. *Eagle Realty*, 2022-Ohio-4106, at ¶ 26 (1st Dist.). The trial court found that the plaintiffs' prejudgment interest began accruing on the date that the letter imposed as a deadline for the defendants to consent to payments. *Id.* This Court determined that the trial court did not abuse its discretion because the accrual date corresponded with that deadline. *Id.*

{¶79}  Here, the trial court chose a prejudgment-interest accrual date that was years after Weckel sent his demand letter to C+R and C+R refused to comply with the demand. We held above that Weckel's breach-of-contract claims accrued on that date. Thus, the trial court could have chosen a prejudgment-interest accrual date years earlier than the date the trial court chose.

{¶80}  But below, Weckel requested that the trial court award him prejudgment interest starting on March 15, 2018. The trial court agreed and set March 15, 2018, as the accrual date. Although the trial court's choice of accrual date was years later than it may have been, choosing March 15, 2018, was not an abuse of discretion because Weckel asked for that date. Accordingly, we hold that Weckel's prejudgment-interest award began accruing on March 15, 2018.

### ii.  The trial court's interest-rate determination was an abuse of discretion

{¶81}  The trial court chose an improper interest rate because it failed to comply with R.C. 1343.03(A) and the Shareholder Agreement. While R.C. 1343.03(A) sets a default interest rate, when the parties' contract provides "a different rate of interest in relation to the money that becomes due and payable, . . . the creditor is entitled to interest at the rate provided in that contract."

23

**{¶82}** The Shareholder Agreement instructed that the interest rate on any interest due under the contract would be the applicable IRS rate "as of the date [C+R] first becomes obligated to pay interest on any obligation created pursuant to this Agreement."

**{¶83}** The Shareholder Agreement provides that at the end of a shareholder's employment, C+R must purchase, and the shareholder must sell, the employee's ownership shares in C+R. Within 30 days "after receipt by the Company of the appraisal report disclosing the Appraised Value for the applicable Valuation Date," C+R had to deliver to Weckel a promissory note and the first of ten annual payments. That promissory note was to include a principal payment and "shall bear interest on the unpaid balance thereof, from and after the Initial Payment Date, at the rate set forth" in the contract. The date that C+R delivered the note and first payment "shall be the 'Initial Payment Date.'"

**{¶84}** Based on the plain language of the contract, the Initial Payment Date was (1) the day that C+R first became obligated to pay interest under the contract and (2) the day on which to select the applicable IRS rate. But the record does not contain any evidence of when C+R received the "appraisal report," which triggered C+R's obligation to pay and the Initial Payment Date. C+R acknowledged at oral argument that the appraisal report is not in the record.

**{¶85}** There is evidence in the record suggesting that, at some point, the appraisal report triggered C+R's obligation to pay. First, C+R attempted to make payments to Weckel in 2004 and 2005. Second, there appears to be no dispute that Weckel's shares were given values as of 2004 and 2005. Third, C+R admitted below that it had been obligated to pay for Weckel's shares at some point.

24

{¶86} We conclude that C+R's obligations under the contract did arise and that there is an Initial Payment Date upon which to determine the interest rate. But the parties failed to establish when, exactly, it arose.

{¶87} We hold that the trial court abused its discretion when it calculated prejudgment interest based on a March 2018 rate-determination date because it was contrary to the plain language of the contract. We reverse the trial court's prejudgment-interest award and remand the cause to the trial court to determine the correct Initial Payment Date and prejudgment-interest rate, and to calculate the prejudgment-interest award based on that date and its chosen March 15, 2018 accrual date. Accordingly, we sustain in part and overrule in part C+R's fourth assignment of error.

## B. WECKEL'S APPEAL

{¶88} Weckel's cross-appeal asserts that the trial court erred by (1) failing to award him contractual interest under the Shareholder Agreement apart from statutory prejudgment interest, (2) selecting an inappropriate prejudgment-interest rate, (3) miscalculating prejudgment interest, and (4) failing to award attorney fees.

1. **The trial court lacked jurisdiction to consider Weckel's Civ.R. 60(B) motion**

{¶89} In his first assignment of error, Weckel argues that the trial court erred in denying his Civ.R. 60(B)(5) motion, which sought modification of Weckel's damages award to include the contractual interest payments that he would have received over the 10 years in which C+R was obligated to purchase his shares.[3] But like C+R's Civ.R. 60(B) motion, Weckel's motion was outside the scope of our limited

---

[3] Weckel's motion did not explain why he was entitled to relief under Civ.R. 60(B)(5).

25

remand and the trial court lacked jurisdiction to consider it.

{¶90} The trial court granted Weckel's motion for summary judgment in July 2021. The trial court awarded Weckel $1,069,756 in damages, which reflects the amount that Weckel had requested in his summary-judgment motion. In other words, Weckel's requested damages only accounted for the principal value of Weckel's shares and did not include a request for the interest payments that would have accrued over the ten years the Shareholder Agreement contemplated payment.

{¶91} After the trial court granted summary judgment, Weckel moved for prejudgment interest and attorney fees in August 2021. C+R then filed its notice of appeal. We remanded the cause in October 2021 for the trial court to resolve Weckel's two pending motions. Weckel filed his motion to "supplement motion for PJI and for relief under Rule 60(B)" in August 2022. The trial court ruled in September 2023, stating, "Weckel's request to modify the valuation of Weckel's shares is DENIED and the court finds the proper valuation is still $1,069,756."

{¶92} For the same reason as explained under C+R's third assignment of error, the trial court lacked jurisdiction to consider Weckel's Civ.R. 60(B) motion, and to the extent that it considered Weckel's Civ.R. its ruling is void. *See Mitchell & Assocs., Inc. v. Professional Investigators & Sec., Inc.*, 1989 Ohio App. LEXIS 5129, *4 (8th Dist. Dec. 7, 1989) ("Civ. R. 60(B)(1) is a proper motion to correct a judgment amount. . . . A trial court cannot act on a Civ. R. 60(B) motion during the pendency of an appeal.").

{¶93} We dismiss the portion of Weckel's appeal related to the trial court's denial of his Civ.R. 60(B) motion for lack of a final appealable order and accordingly do not reach Weckel's first assignment of error.

26

## 2. The trial court's prejudgment-interest award was an abuse of discretion

**{¶94}** In his second and third assignments of error, Weckel asserts that the trial court applied an incorrect interest rate and improperly calculated prejudgment interest. As discussed above, the trial court incorrectly determined the date for which to determine the IRS rate. We sustain Weckel's second and third assignments of error, reverse the trial court's prejudgment-interest calculation, and remand the cause to the trial court to properly determine prejudgment interest consistent with this opinion.

## 3. The trial court's denial of attorney fees was not an abuse of discretion

**{¶95}** In his final assignment of error, Weckel argues that the trial court abused its discretion in denying his motion for attorney fees. He asserts that he is entitled to attorney fees under the "bad faith" exception to the "American Rule." We review a trial court's ruling on a motion for attorney fees based on the bad faith of a litigant for abuse of discretion. *See SST Bearing Corp. v. Twin City Fan Cos.*, 2012-Ohio-2490, ¶ 29 (1st Dist.).

**{¶96}** Under the "American rule," parties to a civil action bear their own attorney fees. *Weckel III*, 2019-Ohio-3069, at ¶ 7 (1st Dist.). There are limited exceptions to this rule. A court may award attorney fees to a prevailing party if (1) authorized by a contract between the parties, (2) authorized by statute, or (3) the prevailing party demonstrates that the unsuccessful party acted in "bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons." *Sorin v. Bd. of Edn.*, 46 Ohio St.2d 177, 181 (1976); *see Weckel III* at ¶ 7. The Shareholder Agreement does not authorize attorney fees.

**{¶97}** The Ohio Supreme Court has defined "bad faith" in the negative as "[a] lack of good faith." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983).

27

[A]lthough not susceptible of concrete definition, [bad faith] embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*Id.*

{¶98} Weckel asserts that the terms of the Shareholder Agreement were "clear and unambiguous" and that C+R refused to comply with its obligations "through pretextual arguments." The trial court, noting that this case has a "tortured and complicated history," did not find that C+R had engaged in bad faith. Though C+R did not prevail below, its arguments regarding res judicata and anticipatory repudiation were not frivolous. Moreover, although Weckel claims the terms of the Shareholder Agreement are clear, he has taken conflicting and self-serving positions on issues interpreting the contract. Regardless, he failed to show that the trial court abused its discretion. We overrule Weckel's fourth assignment of error.

### III. Conclusion

{¶99} For the foregoing reasons, in the appeal numbered C-210425, we overrule C+R's first and second assignments of error. In the appeal numbered C-230543, we dismiss the portion of the appeal related to the trial court's denial of C+R's Civ.R. 60(B) motion and sustain C+R's fourth assignment. In the appeal numbered C-230535, we dismiss the portion of the appeal related to the trial court's denial of Weckel's Civ.R. 60(B) motion, and sustain his second and third assignments of error, but overrule his fourth assignment of error. The trial court's judgment is affirmed in

part, reversed in part, and this cause is remanded for further proceedings consistent with the law and this opinion.

Judgment accordingly.

**ZAYAS** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.